PAUL BOWSER *vs.* ALBERT L. CHALIFOUR & others.[1]

Essex.   April 3, 1956. — June 27, 1956.

Present: QUA, C.J., WILKINS, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Contract,* Construction, Impossibility of performance.   *Unjust Enrichment.*

In an agreement by trustees who had leased premises for a term expiring at the time of termination of their trust, a remainderman entitled to the premises at that time, and the lessee, who had advanced money to the trustees for alterations to the premises which they were obligated by the lease to undertake, provisions that such advance was "not to be repaid by" the trustees but was "to be repaid" "only out of rentals that may become due" from the lessee to the remainderman "by reason of any occupancy" under a new lease to be given to the lessee by the remainderman upon his acquiring the premises, that the remainderman was so "to reimburse" the lessee "out of aforesaid . . . rentals," and that periodically "upon receipt of said rent" the remainderman should forthwith pay "an equivalent amount" to the lessee "until . . . [his advance] shall have been paid in full," merely emphasized an understanding by all parties that the trustees were under no obligation to reimburse the lessee in any event whatsoever and did

[1] Albert L. Chalifour and Harry P. Goldstein, trustees under the will of Demrise M. Chalifour.

not purport to absolve the remainderman from liability to reimburse the lessee if the remainderman should never acquire the premises and the lessee should never occupy under him; and the remainderman became liable to reimburse the lessee on the ground of unjust enrichment where, prior to the remainderman's acquisition of the premises, they were taken by eminent domain.

BILL IN EQUITY, filed in the Superior Court on June 4, 1954.

The suit was heard by *Cahill*, J.

*David S. Hoar*, (*Harry P. Goldstein* with him,) for the defendant Chalifour individually.

*Frederick D. Vincent, Jr.*, (*Thomas J. Colbert* with him,) for the plaintiff.

COUNIHAN, J.  The plaintiff is a promoter of wrestling matches and other sports events.  On September 20, 1944, he acquired a lease of the premises numbered 43–45 North Street, Salem, known as the North Street "Rink" or "Arena," for the purpose of conducting sports exhibitions therein.  The premises were then owned by the defendants Chalifour and Goldstein as trustees under the will of Demrise M. Chalifour, the late mother of Chalifour.  The lease was to expire on January 10, 1951, when the trust was to terminate and the title to the premises revert to Chalifour individually, free of all trusts.

In the lease the plaintiff agreed to pay rent at the rate of $100 a week, and he also agreed to make repairs necessary to put the premises in condition for their intended use.  The trustees agreed to reimburse the plaintiff for the cost of such repairs by crediting him with the amount of weekly rent due from him until he was fully reimbursed for all costs he should have incurred, with certain limitations not here material.  The trustees agreed with the plaintiff to make such future major structural repairs as might become necessary during the term of the lease, with certain exceptions not here material.  The parties agreed that if any license, permit, or certificate required by law for the use of the hall for the purposes set forth in the lease should be suspended or revoked for any cause, and such suspension or

revocation should exist for at least thirty days, the lease should terminate without further obligation of either party, except for any obligations incurred prior to the date of such suspension or revocation. Then followed a most important provision which read, "If prior to such termination the Lessee has not been fully compensated for the actual costs of his aforesaid repairs, there shall nevertheless be no further liability for same upon the Lessors, and under such circumstances the reimbursement from the Lessors to the Lessee shall be limited to such sum as may have been credited on weekly rentals prior to the date of termination." Another clause of the lease permitted the lessors to terminate the lease in case of any taking by public authority for public uses.

The plaintiff entered into possession of the premises and conducted exhibitions therein until June 28, 1948, when the plaintiff and the trustees were notified by a building inspector of the department of public safety of the Commonwealth that, in order to secure a new license for the use of the premises, certain changes would have to be made in the building occupied by the plaintiff. Negotiations were carried on between the parties relative to the expense of making such repairs which it was the obligation of the trustees to undertake under the terms of the lease. As a result of these negotiations the plaintiff, the trustees, and Chalifour individually entered into a supplemental agreement dated November 5, 1948. This agreement provided that the plaintiff would provide the trustees with $3,515, which was one half the contract price for making such repairs, and that he would be reimbursed in the manner provided in the supplemental agreement. The plaintiff provided the trustees with $3,515 and after such repairs were made the plaintiff resumed occupancy of the rink and continued to pay the trustees the prescribed rental of $100 a week according to the terms of the lease.

On October 18, 1950, the parties were notified by the department of public works of the Commonwealth that it had taken all of the premises by eminent domain for highway

purposes. As a result Chalifour never came into possession of the premises as it was expected that he would under the will of his mother. He therefore was unable to perform the obligations imposed upon him under the supplemental agreement.

In this suit the plaintiff seeks to have established the amount of money due him from Chalifour individually and also to reach and apply in satisfaction of such claim any money which may be due Chalifour from the trustees. The suit was tried upon what amounted to a statement of agreed facts. The judge made findings of fact and entered a decree ordering Chalifour to pay the plaintiff the sum of $3,515 with interest and ordering the trustees to pay such money to the plaintiff out of money due Chalifour. The defendants appealed. There was no error.

The real controversy in this case arises out of the construction to be put upon paragraphs 4 and 5 of the supplemental agreement. Paragraph 4 reads in part, "The total amount of $3,515.00, which it is expected will be . . . [Bowser's] contribution hereunder towards the cost of the above-mentioned alterations, are *not to be repaid by the . . . Trustees u/w Demrise M. Chalifour,* but are to be repaid to . . . [Bowser] *only out of rentals that may become due* from . . . [him] to Albert L. Chalifour . . . by reason of any occupancy of said Arena after January 10, 1951 . . ." (emphasis supplied). Paragraph 5 reads in part, "Albert L. Chalifour individually . . . does hereby covenant and agree (a) To reimburse Paul Bowser as provided in the preceding paragraph out of aforesaid weekly rentals due for use of the Arena after January 10, 1951: (b) . . . (1) Bowser shall be entitled to a lease of said premises, substantially similar in provisions to the lease now held by him on said premises, for a period of Thirty-six (36) weeks, during which term the rental shall be One Hundred (100) Dollars weekly. Upon receipt of said rent, Chalifour . . . shall forthwith pay to Bowser an equivalent amount weekly until Bowser's entire contribution hereunder, amounting to $3515.00, shall have been paid in full."

Chalifour argues that the taking by eminent domain terminated not only the lease but also his obligation to reimburse the plaintiff for the $3,515 he advanced in accordance with the terms of the supplemental agreement. He contends that this money was to be repaid "only out of rentals that may become due" from the plaintiff to Chalifour on account of future occupancy. He insists that, since the plaintiff never entered into occupancy under the terms of the supplemental agreement, no rent ever became due and hence no obligation to reimburse the plaintiff ever arose. We are of opinion, however, that the quoted language must be read and construed in connection with earlier language used in paragraph 4 to the effect that the $3,515 is "not to be repaid by the . . . Trustees . . . ." Read and construed together we believe that the two phrases were used merely to emphasize the understanding that the trustees were under no obligation to reimburse the plaintiff in any event whatsoever. We are confirmed in our belief by paragraph 5 (b) (1) wherein it is unequivocally provided that "Upon receipt of said rent, Chalifour . . . shall forthwith pay to Bowser an equivalent amount weekly until Bowser's entire contribution hereunder, amounting to $3515.00, shall have been paid in full." The cases relied upon by Chalifour in his brief do not support his contention.

It is plain from the record that the supplementary agreement was drafted by the defendants. It is settled that a written instrument is construed strongly against the party who drew it if ambiguous or uncertain language is used. *New York Central Railroad* v. *Stoneman,* 233 Mass. 258, 262. *Morse* v. *Boston,* 260 Mass. 255, 262. *Schaffer* v. *Hotel & Railroad News Co.* 266 Mass. 276, 277. Contracts should be construed in accordance with justice and common sense and the probable intention of the parties. *Clark* v. *State Street Trust Co.* 270 Mass. 140, 153.

We are of opinion that this is a case where the taking of the premises by the Commonwealth made the performance of the obligations by Chalifour impossible. In these circumstances the plaintiff is entitled to the return of what he paid

under the supplemental agreement when the purpose for which he paid became impossible of performance through no fault of any of the parties. Chalifour is not entitled to be unjustly enriched at the expense of the plaintiff. *Cochrane v. Forbes*, 257 Mass. 135, 150, and cases cited.

It is perhaps worth noting that, under the terms of the original lease, the obligation to reimburse the plaintiff for repairs made by him was to cease if in certain circumstances the lease was terminated prior to full repayment. This condition, however, applied only to repayment for repairs which the plaintiff initially was required to' make prior to his occupancy. If nothing more, this indicated an ability on the part of the defendants to spell out a clause to accomplish explicitly what Chalifour here contends the supplementary agreement accomplished by inference.

One further point remains to be disposed of. It is admitted that the defendant trustees received $35,000 and the plaintiff received $1,500 from the Commonwealth in settlement of their claims for damages by reason of the taking. Chalifour argues that in some manner the settlement with the Commonwealth bars the plaintiff from recovery. It is true that where a lease provides for a termination of the tenancy in case of a taking by eminent domain, the lessee is not entitled to recover damages for such taking. *Sparrow Chisholm Co. v. Boston*, 327 Mass. 64, 67. That case, however, has nothing to do with the case at bar. Whether or not the plaintiff was entitled to receive or keep the money he received by way of settlement is an issue not presently before us and upon which we are not required to express an opinion.

*Decree affirmed with costs of this appeal to the plaintiff.*