LAWRENCE P. KENT *vs.* WATER COMMISSIONERS OF THE
BARNSTABLE FIRE DISTRICT.

Barnstable.    April 7, 1959. — May 4, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Laches. Equity Jurisdiction,* Laches, Rescission. *Municipal Corpora-
tions,* Waterworks. *Equity Pleading and Practice,* Parties, Report of
material facts, Exhibits, Appeal.

A suit in equity seeking cancellation of a contract between the plaintiff
and a fire district pertaining to its waterworks should have been
brought against the district and not against its water commissioners.
[160]

Certain exhibits not mentioned in a report of material facts by the judge
on appeal in a suit in equity were not brought before this court al-
though, two weeks after the report, the judge made a certificate, not
purporting to be an amendment of the report, permitting the exhibits
to be transmitted to this court in their original form. [162–163]

Where it appeared that a real estate developer with advice of counsel
executed and delivered to a fire district a document containing an
application for an extension of the district's water mains into the
applicant's development and a guaranty by him to the district of a
certain amount of revenue from the extension over a period of ten
years, that on the strength of such document the district made the
extension at substantial expense and thereby enabled the developer
to sell most of his lots, and that he made payments under his guaranty
for seven years, a conclusion was justified that laches barred a suit in
equity brought by him nine years after giving the guaranty for can-
cellation thereof on the ground that it was invalid. [163–164]

BILL IN EQUITY, filed in the Superior Court on March 4,
1958.

The suit was heard by *Dewing, J.*

*Philip Jones,* for the plaintiff.

*William P. Swift,* for the defendants.

CUTTER, J.   This is a bill in equity by Kent, the owner
of a tract of land in Barnstable, against the commissioners[1]

---

[1] The suit should have been against the district.  An amendment may be
allowed for this purpose, on motion of the commissioners, even though the
point is not now raised.  See *Board of Health of Woburn* v. *Sousa,* 338 Mass.
547, 548.

administering the waterworks of the fire district created by St. 1926, c. 109, in accordance with St. 1934, c. 302. The bill seeks cancellation of Kent's guaranty of revenue dated May 9, 1949, mentioned below. The commissioners filed a counterclaim for amounts alleged to be due under the guaranty. The trial judge made voluntary findings. A final decree was entered holding the guaranty to be valid and ordering Kent to pay to the district, with costs, the sum of $651.17 owed under the guaranty. Kent has appealed. The trial judge on September 15, 1958, adopted as a statutory report of material facts his earlier findings. On September 29, 1958, he signed a certificate that the reproduction of certain exhibits would cause unwarranted expense and ordered them transmitted to this court in original form. The evidence is not reported. The facts below are stated as found by the judge.

Prior to May 9, 1949, Kent had been developing his land for house lots by constructing streets and doing "further work to complete a real estate development." On that date, he "proposed to the . . . board that it supply him at . . . [his] expense . . . water in connection with his development." Kent, a "manufacturer's agent dealing in plumbing supply specialties," agreed to purchase pipe and fittings then in short supply and did so. He was reimbursed for this expense.

After the pipe and accessories had been delivered to Kent, the commissioners told him that "the public water system would not be connected with the system to be constructed" unless Kent "would give to the . . . fire district an easement . . . through the ways" in the real estate development and would execute the guaranty agreement. On May 9, 1949, when he was represented by an attorney, Kent conveyed the desired easement and also executed the guaranty agreement. The guaranty agreement consisted (a) of an "application for water service from the . . . district which will include the installation and maintenance of an extension of its water mains" in and within Kent's development,

and (b) a guaranty to the district "for . . . ten . . . years . . . [of] a yearly income from services connected to such extension . . . equal to ten per centum . . . of the original cost of such installation," to be computed in a manner which need not be set out here.  In substance, Kent thus assured the commissioners that each year he would pay on the guaranty the amount by which net revenues from supplying water to the real estate development (above the cost to the district of the water so provided) fell below ten per cent of the original cost of the installation, so that in ten years the district would have received back in income or guaranty payments the cost of the installation.

On the strength of this guaranty the district extended the water supply to Kent's development.  It has fully performed its obligations.  Kent for seven years made payment in accordance with his guaranty agreement.  He has now sold all but two of his lots and seeks to set aside the guaranty, alleging that its execution was compelled by duress on the part of the commissioners and that their acts were beyond their authority.  Kent "is an experienced and successful business man" and "executed the agreement of May 9, 1949, knowing full well its import and the resulting cost to him."  The commissioners in their answer set up the defence of laches.

1. The exhibits referred to in the certificate of September 29, 1958, with the exception of the instrument granting an easement to the fire district and the guaranty agreement, are not mentioned in the judge's report of material facts. The easement is adequately described in the report.  ·The guaranty agreement is sufficiently established by the pleadings.  The other exhibits are not properly before us because not expressly incorporated by reference in the report of material facts.  As the certificate was executed two weeks after the adoption of the judge's findings as his report of material facts, we do not construe the two separate documents as intended, in effect, to be one document.  Cf. *Clarke* v. *Board of Appeals of Nahant*, 338 Mass. 473, 475.  The certificate (in the absence of any statement to

that effect) does not appear to have been intended as an amendment to the report. Examination of the exhibits, however, indicates that, apart from the guaranty agreement, they are immaterial.

2. The mutually consistent findings contained in the report of material facts by the trial judge are to be taken as true in the absence of the evidence. *Harpel* v. *Craig*, 327 Mass. 229, 232. *Rothenberg* v. *Boston Housing Authy.* 335 Mass. 597, 599–600. They amply justify the conclusion that Kent cannot prevail in this equitable proceeding because of laches. Kent's contention, that the commissioners had no statutory authority[1] to require him in 1949 to execute the revenue guaranty agreement, could have been asserted at that time. In reliance upon his guaranty, entered into by him with the advice of counsel, he has reaped the advantages of obtaining the water service for his development essential to enable him to sell the lots. The district has made the substantial expenditures called for by its undertaking and has performed its part of the bargain. There has been substantial change of position by the district on the strength of Kent's action. He cannot be heard at this late date to question the validity of his guaranty.

Kent knew in 1949 all the facts that could lead him to think that the guaranty agreement might be improper. If Kent then had moved promptly to protest the requirement of a guaranty, the commissioners (if convinced that there was any merit in Kent's contention) for the district's own benefit might reasonably have been able to delay the substantial expense of the extension of the water system, or they might have adjusted the rate structure in a manner which would appropriately have distributed the expense. At this late date, the commissioners would be unable to adopt these

---

[1] It is unnecessary for us to consider whether such authority exists (a) under St. 1926, c. 109, § 2, which gives to the fire district authority to "make contracts for . . . water service . . . and for any other thing that may lawfully be done by said district," or (b) under general statutory provisions applicable to such districts or by assimilation to the powers of town and other municipal or governmental entities. See *Seaver* v. *Onset Fire Dist.* 282 Mass. 209, 213; *Hurlburt* v. *Great Barrington*, 300 Mass. 524, 526–527; Rhyne, Municipal Law, 6–7, 70. Cf. G. L. c. 40, § 4, as from time to time amended.

and other possible remedial measures. The judge was justified in concluding that there had been serious delay, disadvantageous to the district, in enforcing Kent's rights (if he had any), see *Norton* v. *Chioda*, 317 Mass. 446, 451–452, and Kent had shown affirmative acquiescence in the district's change of position. See *Uccello* v. *Gold'n Foods, Inc.* 325 Mass. 319, 327–330; Pomeroy, Equity Jurisprudence (5th ed.) §§ 419–419d, 816–818. Cf. *Moseley* v. *Briggs Realty Co.* 320 Mass. 278, 283–284; *Janes* v. *Washburn Co.* 326 Mass. 356, 362.

There is no finding of facts which requires or permits the conclusion that Kent acted under duress in 1949 in executing the guaranty.

Since the final decree could properly be entered on the basis of the facts found by the judge, the decree is to be affirmed. The district is to have costs of this appeal.

*So ordered.*