EDWARD T. MAINE *vs.* ELEANOR V. BURNETT & others.[1]

Suffolk. January 4, 1962. — February 6, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Contract,* Construction, Death of party. *Executor and Administrator,* Claim against estate, Short statute of limitations. *Words,* "Net amount payable."

A contract by heirs of a decedent to pay for services rendered in representing them twenty percent of "the net amount payable to" them in a contest of the decedent's will entitled their representative, where the decedent's estate consisted of cash and mineral properties, not only to twenty percent of cash received by the heirs as a result of such a contest, but also to twenty percent of the fair market value of interests in the mineral properties so received by them; it was unimportant in the construction of the contract that the parties did not discuss and did not have in mind any payment to the representative on the basis of "mineral royalties" received by the heirs or that he made no claim to payment on that basis until several years after the heirs began to receive the royalties. [557–559]

A claim based on an agreement by a decedent's heir to pay to the claimant twenty percent of the value of whatever might be received by the heir as a result of a contest of the decedent's will gave the claimant no interest in mineral property so received by the heir, but was a mere contractual claim against the heir and, upon the heir's death, against the heir's estate; and the claim became barred by the short statute of limitations, G. L. c. 197, § 9, through failure to bring an action upon it against the heir's administratrix within the year specified in § 9, and could not be enforced in a suit in equity for specific performance brought long after the expiration of such year by the claimant against one who had succeeded to the ownership of the mineral property. [559–560]

BILL IN EQUITY, filed in the Superior Court on October 17, 1958.

The suit was heard by *Lurie, J.*

*Maurice H. Kramer,* for the plaintiff.

*Nathan Goldstein,* for the defendants Burnett.

*Harry A. Marcus,* for the defendant Dorothy Dunn.

CUTTER, J. This is a bill in equity seeking specific performance of a compensation agreement. Certain facts were

---

[1] The remaining defendants are Robert P. Burnett and Dorothy Dunn.

stipulated. The trial judge filed a report of material facts. A final decree was entered dismissing the bill. The plaintiff appealed and also has filed a bill of exceptions presenting exceptions to the exclusion of evidence.

On February 6, 1952, one Agnes McManus died testate in Texas. Among her heirs at law were three sisters and a brother, including the defendants Eleanor V. Burnett, Robert P. Burnett, and Sarah Dunn, the now deceased mother of the defendant Dorothy Dunn. The plaintiff is the son of Lucy A. Maine, another sister of Mrs. McManus. As to her the bill has been dismissed.

The plaintiff and Eleanor V. Burnett were present when Mrs. McManus's will was read. By the will, Eleanor V. Burnett, Robert P. Burnett, Lucy A. Maine, and Sarah Dunn were each given $5. Later in Boston, the plaintiff consulted an attorney, Mr. Leon Eyges, who prepared a "compensation agreement" reading, "In consideration of services rendered, and to be rendered by Edward T. Maine, in representing the undersigned, heirs-at-law of Agnes Maude McManus, late of Dallas . . . agree to pay Edward T. Maine . . . *twenty percent of the net amount payable to each of us,* as heirs-at-law whether said sum is ordered paid to us by way of compromise, or by establishment of our interest by judicial decree in the contest waged by us in said estate: that the sum payable to us shall be paid by our attorney to said Maine and he shall have the right to deduct twenty percent . . . from each amount due us and then pay over the remaining balance due us immediately" (emphasis supplied). This agreement was signed on July 24, 1952, by Mrs. Maine, Eleanor V. Burnett, Robert P. Burnett, and Mrs. Sarah Dunn. Mr. Eyges retained Texas counsel and a will contest took place. A compromise was effected and each of the signers of the compensation agreement was "to receive approximately 3¼% . . . of the cash division[2] of the estate."

[2] This finding is somewhat inconsistent with the stipulation of the parties that, by the compromise, each signer of the compensation agreement had been "awarded a percentage of the estate, to wit, each of them received 3.28132 per cent of the estate."

On April 2, 1954, September 1, 1954, and January 5, 1956, each signer received cash distributions amounting in the aggregate to $3,773. These were paid to Mr. Eyges, who deducted and paid to the plaintiff his twenty per cent compensation.

It was stipulated that the estate consisted of cash and mineral properties. A 3.28132 per cent interest in certain such mineral properties is now owned by Dorothy Dunn and a like interest is held by each other defendant. Payments of royalties upon these properties began in May, 1955, and have continued. The plaintiff has received no part of these royalties but contends that he is entitled to twenty per cent of them.

The trial judge found "that there was never any discussion between . . . [the plaintiff] and the defendants . . . relative to any agreement for compensation . . . from . . . [the] mineral royalties," and that when Mr. Eyges drew up the compensation agreement, Mr. Eyges, the plaintiff, and the signers did not have in mind that the plaintiff was to receive twenty per cent of any royalties which might be paid to the signers as a result of the will contest. The plaintiff knew, when he heard the will read, "that there were . . . mineral rights in the estate," and also knew of the receipt by the defendants of royalty checks "at all times and also knew the varying amounts of these checks. He never made any claim with regard to these royalties at any meeting at [Mr.] Eyges' office" or in any letters to the defendants until "approximately . . . [three] and a half years after the defendants began to receive royalties."

The plaintiff "knew that his aunt Sarah Dunn . . . died in 1956, that her husband . . . also died later that year, and that Dorothy Dunn . . . was appointed administratrix." The plaintiff "brought no claim against the estate" and instituted no legal proceedings arising out of his asserted claim until he commenced this bill in equity.

1. The compensation agreement fixes the plaintiff's compensation at "twenty percent of the net amount payable to each of" the signers. We interpret this language of the

written agreement (see *Rizzo* v. *Cunningham,* 303 Mass. 16, 20–21; *Gainsboro* v. *Shaffer,* 339 Mass. 1, 3) in the light of the judge's findings that the plaintiff knew that there were mineral rights in Mrs. McManus's estate, that there was no discussion "relative to any agreement for compensation to . . . [the plaintiff] from" the royalties, and that the plaintiff, Mr. Eyges, and the signers of the compensation agreement did not have "in mind that . . . [the plaintiff] was to receive . . . twenty percent of any royalty dividends." The evidence is not reported, and these findings are to be taken as correct. See *Kent* v. *Water Commrs. of the Barnstable Fire Dist.* 339 Mass. 160, 163.

The term "net amount payable" is sufficiently broad to include the fair market value of property turned over to the signers in property other than money as well as cash payments. The most natural meaning (cf. *Taylor* v. *Gowetz,* 339 Mass. 294, 300) of the agreement, as we read it, is that the plaintiff was to have twenty per cent of what they might procure by a will contest either through compromise or by judicial decision. That the parties did not discuss royalties, or have in mind a payment to the plaintiff based upon royalties, seems to us of slight assistance in interpreting this agreement. The parties could not know in advance either the amounts (if any) which they severally would receive as a consequence of their contest or whether such amounts would be distributed in cash or in property, even if this latter matter was really considered at all. The agreement, in the circumstances, cannot reasonably be read as showing an intention that, if the whole (or most) of the settlement should be in property, the plaintiff would receive nothing (or little) for his highly beneficial services. We interpret the written agreement as giving to the plaintiff a twenty per cent share of the fair market value of whatever was received by way of compromise. See the somewhat analogous situation considered in *Botaish* v. *Romanos,* 338 Mass. 75, 78–79. The judge's subsidiary finding that the compromise gave to each signer approximately "3¼% . . . of the *cash* division of the estate" (emphasis supplied; see

footnote 2, *supra*) is inconsistent with the facts stipulated and cannot stand. On the record there can be no doubt that the receipt of the mineral rights was a consequence of the compromise. No argument to the contrary is made. The meaning of the compensation agreement does not seem to us to be affected by the findings about the negotiations or about the parties' conduct in applying the agreement. There is no such uncertainty about the meaning of this agreement as to require that it be construed with special strictness against the plaintiff, who first consulted Mr. Eyges, the draftsman of the agreement. Cf. *Bowser* v. *Chalifour,* 334 Mass. 348, 352. The failure of the plaintiff for a considerable period of time to assert any claim to any payment based upon the value of the mineral rights or the royalties does not appear, in the circumstances, to be a practical construction of the agreement by the parties entitled to weight. Cf. *Coleman Bros. Corp.* v. *Commonwealth,* 307 Mass. 205, 209–210; *Cetrone* v. *Paul Livoli, Inc.* 337 Mass. 607, 609–610.

2. Although we perceive nothing in the subsidiary facts found by the trial judge which would justify the conclusion that the plaintiff is barred by laches from relief against the now living signers of the compensation agreement, a different question is presented by his delay in proceeding against Dorothy Dunn. The person originally entitled to distribution of the mineral rights, which Dorothy Dunn now holds, was her mother Sarah Dunn. She died in 1956. Dorothy Dunn, who was appointed administratrix of her mother's estate in 1956, has pleaded that relief against her is barred by the short statute of limitations (G. L. c. 197, § 9, as amended through St. 1954, c. 552, § 1). The bill in equity was not commenced until October 17, 1958, almost three and a half years after the first royalty payments were made and more than a year after Dorothy Dunn's appointment as administratrix. The signers' liability upon the compensation agreement was contractual. It could have been enforced against them, or the administratrix of Sarah Dunn, respectively, by an action or actions at law after the com-

promise was effected. Sarah Dunn was subject to this liability at her death in 1956, for the compromise appears to have been made prior to the first cash distribution from the McManus estate on March 24, 1954. It was a claim against Sarah's estate which was barred by the short statute of limitations, G. L. c. 197, § 9, as amended. See Newhall, Settlement of Estates (4th ed.) §§ 189, 190. We see no basis for any contention that the compensation agreement gave to the plaintiff any equitable or legal property interest in the mineral rights or in the royalties, of a type which might be recovered despite the limitation in § 9. Cf. *New England Trust Co.* v. *Spaulding,* 310 Mass. 424, 429–431. Cf. also *Feeney* v. *Feeney,* 335 Mass. 534, 538.

3. In view of our decision, there is no occasion to consider the plaintiff's exceptions to the exclusion of certain evidence, which had no relation to the issue whether relief against Dorothy Dunn was barred by G. L. c. 197, § 9.

4. The final decree is reversed. The case is remanded to the Superior Court (a) for a determination of compensation owed to the plaintiff based upon the fair market value of the mineral interests received pursuant to the compromise by each of the defendants Eleanor V. Burnett and Robert P. Burnett, and for other and further proceedings consistent with this opinion, and (b) for the entry of a decree dismissing the bill as against the defendant Dorothy Dunn. The plaintiff's exceptions are overruled.

*So ordered.*