*Northern District*

No. 7921

## JOAN B. LARSEN

**v.**

## HEARTHSTONE INSURANCE COMPANY

Argued: Dec. 14, 1972 - Decided: Mar. 22, 1973

*Present:* Flaschner, P.J., Mason, and Bacigalupo, JJ.

Case tried to *Forte, J.* in the District Court of Central Middlesex. Number 27892 of 1972.

**Bacigalupo, J.** In this action of contract, submitted on an agreed Statement of Facts, the plaintiff, as beneficiary, seeks to recover the sum of $1,500 under the provisions of a policy of accident insurance on the life of her deceased husband.

The court found for the defendant and the plaintiff seasonably claimed a report.

The report sets forth only one issue for our consideration. Did the insured's death occur "while he was flying or riding in any private aircraft" under Section 'B' of the policy? *Said Section 'B' reads af follows:*

"Section B — Loss of life indemnity — Other specific accidents.

If such Injuries shall be sustained by the Insured, and shall within ninety days from the date of the accident causing Such Injuries be the sole cause of loss of life by the Insured, and provided Such Injuries to the Insured shall occur: . . . . . . . .

"While flying or riding in any private aircraft; ............. the Company will pay the sum of ................. $1,500.00."

We summarize the pertinent provisions of the agreed statement of facts which was incorporated in the report.

At the time of his death, the insured was riding, by invitation, as a civilian passenger in a plane of the Rhode Island Army National Guard piloted by Master Army Aviator, Benjamin J. Mendes, Jr. (Mendes) Lt. Col. U.S. Army, which took off from Burlington International Airport, Burlington, Vermont, and crashed shortly after takeoff killing the insured, Mendes, and three other passengers.

It was the plan of Mendes to fly to Burlington, Vermont by military aircraft on the weekend of December 5-6, 1970 and then drive to Montreal, Canada to attend a Bruins vs. Montreal Hockey game with a group of friends. He intended to remain in Montreal overnight and return to Burlington for the flight back to his original point of departure.

On Friday, December 4, 1970, Mendes called the Rhode Island Army Air National Guard Facility requesting the use of a military aircraft that the insured was not flying or riding lington, Vermont, on Saturday, December 5, 1970, remaining overnight and returning the following day.

On this day, when Mendes filed his flight plan, he put down as destination Hanscom

Field, Bedford, Massachusetts, a military field where he could pick up only military passengers. Instead of taxiing to the military side of the field, he taxied to the civilian side of the field. There, he picked up 2 civilians, who were being met by Mendes by prearrangement so that they could fly up to attend the Bruins vs. Montreal Hockey game.

On the same day, the aircraft landed at Laconia Municipal Airport, Laconia, New Hampshire, where Mendes picked up another civilian friend for the same prearranged purpose.

The aircraft then proceeded to, and landed at, Burlington International Airport, Burlington, Vermont, whereupon Mendes rented a car and departed for Montreal with the 3 civilians.

The insured had also gone to Montreal by a chartered bus to attend the hockey game. After the game, the insured, who knew Mendes for some years, arranged with Mendes to fly him back to Bedford, Massachusetts. On December 6, 1970, Mendes and his 4 civilian passengers took off from the Burlington Airport, the plane crashed and all on board were killed.

Only military personnel were supposed to be on the aircraft although Mendes did give all civilians aboard permission to fly with him for the purposes hereinbefore stated.

The defendant takes the position that because the insured, at the time of his death, was riding as a civilian in a National Guard Aircraft that the insured was not "flying or riding

in any private aircraft and that Section 'B' of the policy is not concerned with purposes of the flight.

The plaintiff takes the position that the paramount consideration in interpreting the words "private aircraft" is not to be found in the ownership of the vehicle but rather in the use to which it was being put at the time of the accident and that at the time of the accident, the plane was being used as a means of transportation to and from the Hockey Game, "that it had been appropriated for private use perhaps improperly — but nonetheless private."

There are many decisions both in Massachusetts and other jurisdictions that interpret the word "private" as it applies to various situations but we have been unable to find any decision in this Commonwealth, nor has our attention been directed to any, which is decisive of the issue presented to us.

*Hence, we look elsewhere.*

*In the case of Miller v. Farmer's Mutual Automobile Insurance Company,* 292 P2d 711 (Kansas 1956), the court construed the language in the exclusionary clause of a policy of automobile insurance which stated that "this insuring agreement does not apply . . . . . to any automobile while used in the business or occupation of the named insured . . . . . *except a private passenger automobile** operated or occupied by such named insured." At the time

of the happening of the collision which led to the litigation, the insured was operating a government-owned automobile.

While this case may be distinguished on its facts from the case before us, the court in the *Miller* case stated "Defendant inferentially contends that inasmuch as the vehicle in question was government-owned, it therefore was not a *"private"** passenger automobile. This contention cannot be sustained. The test to be applied is the type of vehicle and not its ownership."

*In Interstate Life & Accident Insurance Company* v. *Suggs, Administrator,* 125 SE2d 83 (Georgia 1962), a police officer sustained fatal injuries while on duty patrolling city streets in a municipally owned automobile. The court held that such a vehicle as so used was not a "private, motor-driven automobile" within the terms of an accident policy which provides insurance against death resulting from injuries received by the collision of or by accident to any . . . . private motor-driven automobile in which the insured is riding or driving.

In the course of its opinion, the court said:

"Admittedly, the vehicle was publicly owned, for it was the property of the City of Blackshear. But, ownership alone, may not be determinative of the issue here involved. Most public conveyances, such as trains, airplanes, buses,

---

*\* Emphasis supplied.*

and taxicabs, are privately owned. Nevertheless, they are regarded as public means of transportation because they are devoted to a public use. A publicly owned vehicle may, at times, be devoted to a private use. If, for instance, the vehicle here had been in use at the time as a means of taking a private trip by the insured such as going fishing, or going home for lunch, we might be constrained to hold that it was being devoted to a private use and while upon such use a private vehicle.''

In the absence of authority in this jurisdiction on the question before us, we adopt the reasoning of the Georgia and Kansas cases referred to above. *See also — First National Stores* v. *Welch Co.*, 316 Mass. 147, 149.

If the defendant intended to exclude government-owned aircraft, or to restrict the coverage afforded by Section ''B'' of the policy to privately-owned aircraft, it could have easily done so by appropriate language. We find no such exclusion or restriction in said Section ''B'' of the policy, or anywhere else in the policy.

In the light of the authorities which we have considered, it appears that the word ''private'' as used in Section 'B' of the policy may refer either to ownership or use. Thus, there appears to be an ambiguity in the meaning of the word ''private'' which must be resolved according to well-settled principles of law.

If the language of the contract is ambiguous,

the contract is construed most strongly against the party who drew the contract. *Bowser* v. *Chalifour,* 334 Mass. 348, 352. *Lewis National Corporation* v. *Collentro,* 33 Mass. App. Dec. 86, 96. *Corbin on Contracts,* Sec. 559.

This rule finds frequent application in regard to policies of insurance, which are ordinarily prepared solely by the insurance company, and therefore, the words of the policy are construed most strongly against it. *Restatement of the Law of Contracts,* Sec. 236. *Muller* v. *Boston Casualty Co.,* 304 Mass. 549, 551. Further, where the language of the policy permits two rational interpretations, that more favorable to the interests of the insured is to be taken. *Rezendes* v. *Prudential Ins. Co.,* 285 Mass. 505, 511. *Palumbo* v. *Metropolitan Life Ins. Co.,* 296 Mass. 358, 361. *Martin* v. *Am. Eq. Assurance Co. of N.Y.,* 28 Mass. App. Dec. 162.

We therefore conclude that the case on the Agreed Statement of facts falls within the principles stated above, that the entry of judgment for the defendant was error, that said entry is to be vacated, and that judgment be entered for the plaintiff in the amount of $1,500.00.

ELIOTT MOHLER of Boston
  for the Plaintiff
RICHARD LEE of Boston
  for the Defendant