VALLEY PROPERTIES, INC. and East Bay Development Corp.

v.

KING'S DEPARTMENT STORES OF TEWKSBURY, INC. and King's Department Stores, Inc.

v.

K–MART CORP.

Civ. A. No. 75–2986–Z.

United States District Court, D. Massachusetts.

Jan. 5, 1981.

Robert H. Goldman, Lowell, Mass., for plaintiffs.

John R. Hally, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

This is a declaratory judgment action by Valley Properties, Inc. ("Valley") and East Bay Development Corporation ("East Bay") (sometimes collectively referred to as "plaintiffs") against King's Department Stores of Tewksbury, Inc. and King's Department Stores, Inc. ("King's", or collectively "defendants"). K–Mart Corp., formerly S.S. Kresge Co., has been joined as an additional party defendant. The case is before me on cross motions for summary judgment with respect to Count II of the complaint; for the purpose of these motions, the facts may be briefly summarized as follows:

On April 23, 1965, King's, a discount department store, entered into a lease ("the lease") as Tenant with Shopping Center Realty Trust, a direct predecessor in interest of Valley, as Landlord, for the development of a shopping center in Tewksbury to be known as Stadium Plaza. Section 17 of that lease, divided by the parties herein into parts "A" and "B" for convenience in this litigation, contains restrictive covenants. Part A provides that neither the Landlord nor any related or affiliated successor will use or permit to be used for a discount

department store any property owned or controlled by the Landlord within a radius of three miles of the shopping center. Part B provides that the Tenant will not establish a competing discount department store within a radius of three miles of Stadium Plaza.

Prior to the commencement of this action, after Valley had become the Landlord of Stadium Plaza, Valley entered into an agreement to convey to East Bay a parcel of land adjacent to Stadium Plaza, which Valley had acquired by a series of transactions from time to time after the lease was executed. The agreement provided that East Bay would establish a shopping center on the adjacent land, with K–Mart, also a discount department store, as its primary or anchor tenant, and that by integrating entrances, exits and other aspects of the physical layout, the new shopping center and Stadium Plaza would appear to the public to be a single shopping center. The agreement was contingent on the successful resolution of several issues, including the obtaining of a release by King's from any possible applicability of section 17A of the lease to Valley and East Bay's proposed development of the adjacent parcel. When King's refused to release Valley, Valley brought this action seeking a declaratory judgment that section 17 does not bar its proposed transactions. Count I charges that the covenant restrains competition in violation of Federal antitrust laws; Count II asserts on State law lease construction grounds that the proposed transaction would not violate the lease in any respect. Count II is founded on pendent jurisdiction, as it is based on the same nucleus of facts as Count I, the federal antitrust claim. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Plaintiffs' assertion that their proposed transactions will not be violative of the lease rests on two constructions of section 17A, both of which are disputed by defendants: first, that the section does not apply to "after-acquired" property such as the parcel to be sold to East Bay; second,

that the covenant binds and restricts only those persons who are "related or affiliated successors" of the landlord, a category plaintiffs claim excludes East Bay. The essential task for the court in responding to the parties conflicting interpretations of the section is to determine the intended purpose and effect of the covenant at the time it was written. The underlying principle of construction is that presumed intent may be ascertained from the words used in the written instrument interpreted in light of all the attendant facts. *Suburban Land Co. v. Town of Billerica*, 314 Mass. 184, 49 N.E.2d 1012 (1943). Here the parties were in the process of developing a major shopping center with a number and variety of stores. Section 17 is one clause in a 38–page construction lease with numerous addenda, negotiated, drafted, and refined over a substantial period of time by competent attorneys for both parties. While any ambiguities or uncertainties in a written instrument are to be construed against the party who drew the instrument, *Bowser v. Chalifour*, 334 Mass. 348, 135 N.E.2d 643 (1956), and while plaintiffs claim that attorneys for King's drafted section 17A, neither the complaint nor any affidavits submitted to the court reveal coercion or overreaching influence by either party in negotiating or drafting the lengthy and sophisticated lease. Moreover, the relevant lease provision is in any event clear and unambiguous. The intended purpose of the restrictive covenant may therefore be ascertained from the text of the covenant. Section 17A of the lease, in its entirety, reads as follows:

[A] Landlord warrants and agrees that neither Landlord nor any related or affiliated successor or assignee as Landlord hereunder, whether or not still Landlord hereunder, nor any present or future officer, Director or voting stockholder, while such an officer, Director or voting stockholder, nor George A. Demoulas nor Telemachus A. Demoulas, whether or not still associated or affiliated with the Landlord hereunder, will at any time use any part of the Shopping Center or any property directly or indirectly owned or controlled by it or him, alone or jointly with others,

within a radius of three miles of the Shopping Center, other than operating shopping centers presently so used, owned or controlled by Landlord, or its affiliated or related entities or any such officer, Director or voting stockholder, for the conduct of a discount department store, self-service department store selling merchandise at so-called discount prices, specialty store or department store selling merchandise at a discount or less than conventional prices or off-quality merchandise, junior department store or variety store, or permit any such part or property to be so used. . . .

This clause, considered in the context of the entire lease, is designed quite simply to insulate King's against the financial hazards for the duration of the lease, of direct competition from another discount department store located anywhere within a radius of three miles of Stadium Plaza, to the extent that such protection can be provided by plaintiff. See *Cragmere Holding Corp. v. Socony-Mobil Oil Co., Inc.*, 65 N.J. Super. 322, 167 A.2d 825, 827 (1961). Assurance to a Tenant that a shopping center landlord will neither use nor permit his land to be used to compete with the tenant may well be a significant and substantial factor in the tenant's decision to establish a major department store in a new shopping center. In so ruling, I note that while restrictive covenants were traditionally disfavored as restraints on the free marketability of land, covenants such as the one at issue here have increasingly been found to be reasonable and even necessary inducements to shopping center tenants which facilitate the orderly and harmonious development for commercial use of real property. *Whitinsville Plaza, Inc. v. Kotseas*, 1979 Mass.Adv.Sh. 1262, —— Mass. ——, 390 N.E.2d 243 (1979). The development of new shopping centers requires tremendous outlays of venture capital and risk by prospective tenants as well as by landlords; restrictive covenants against unwanted competition are consistent with the public interest in such development. *Parker v. Lewis Grocery Co.*, 153 So.2d 261 (Miss.1963).

Here, the land which plaintiff proposes to convey to East Bay to be leased to K–Mart, a competitor of King's, was not owned by Valley when the 1965 lease was executed. Plaintiff asserts that such after-acquired land does not fall within the ambit of section 17, and that Valley's contractual promise not to permit the land to be used by a competitor of King's must be strictly limited to that land which Valley owned when it entered into the lease. Defendants argue to the contrary that what they bargained for and secured through section 17 was protection against exactly what plaintiffs propose—a competing discount department store located in what will functionally if not technically be the same shopping center as Stadium Plaza. Defendants argue that the contractual prohibition applies to all land within the three-mile radius which Valley may own or control at any time during the period of the lease. Defendants' interpretation is the better one. In section 17, the landlord promises that he will not "at any time use . . . any property directly or indirectly owned or controlled by it or him . . . within a radius of three miles of the Shopping Center . . . . for the conduct of a discount department store . . . or permit any such part or property to be so used." If the covenant's reach was limited to only those lands owned by plaintiff and its predecessors when the lease was signed, the protection afforded to defendants would be so minimal as to be illusory and therefore not consonant with the essential purpose of the covenant. The landlord's promise binds him for the duration of the lease not to do certain things which might injure his tenant's business. He may not avoid that obligation by making his purchase of land within the restricted area after the lease is signed. The critical obligation is as to the area which is covered, here a three-mile radius, and the duration of the preclusion, here the term of the lease. I rule therefore that the prohibition in section 17 applies to after-acquired land such as the parcel Valley proposes to sell to East Bay.

Similarly, the landlord's obligation under the lease not only prevents him from directly using land he owns for a proscribed purpose, but also bars him from permitting or participating in a scheme whereby his vendee will use the land to compete with the landlord's tenant. Section 17A prohibits Valley from selling any land within three miles of Stadium Plaza to a buyer who intends and agrees with Valley to use the land to compete with King's. Such a transaction amounts to Valley's permitting restricted land to be used for a prohibited purpose. Valley's active participation in the proposed transaction is beyond dispute, particularly as Valley has agreed with East Bay to functionally merge the two shopping centers. Because Valley's proposed actions are barred by the lease, it is not necessary to determine whether East Bay is a "related or affiliated successor or assignee" of Valley.

I find that the prohibition in section 17 prohibits Valley from selling to East Bay a parcel of land adjacent to Stadium Plaza to be leased to K–Mart, a competitor of King's. Accordingly, plaintiffs' motion for summary judgment on Count II of its complaint is denied, and defendants' motion for summary judgment on Count II is granted.*

---

* Plaintiffs have also moved for partial summary judgment on their claim, set forth in their answer to Defendants' Amended Counterclaim, that defendants have violated section 17[B] of the lease by operating a discount department store within three miles of Stadium Plaza. Because that motion raised questions of fact as well as questions of law, summary judgment will not be granted for either party. An eventual ruling in plaintiff's favor on the 17[B] motion would not, in any case, affect the validity of today's ruling. Clauses 17[A] and 17[B] of the lease are independent, and a violation by a tenant of his obligations under one clause of a lease does not release the landlord from any of his obligations under the remainder of the lease. *Sniger v. Fentin*, 4 Mass.App. 215, 344 N.E.2d 420 (1976).