PEOPLES SAVINGS BANK OF YONKERS, N. Y., Respondent, *v.* COUNTY DOLLAR CORPORATION, Defendant, and SEAMEN'S BANK FOR SAVINGS, Appellant. LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Intervenor.

Second Department, January 14, 1974.

*Thacher, Proffitt & Wood* (*Edward C. Kalaidjian* and *Raymond H. Hughes* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General* (*Mortimer Sattler* and *Samuel A. Hirshowitz* of counsel), for intervenor.

*Kent, Hazzard, Wilson, Freeman & Greer* (*William J. Greer* and *Emery M. Anderson* of counsel), for respondent.

SHAPIRO, J.  Defendant the Seamen's Bank for Savings (Seamen's) appeals from an order which, after reargument, granted the plaintiff's motion for an injunction *pendente lite* restraining it from maintaining, operating and conducting the business of a savings bank within the Cross County Shopping Center in the City of Yonkers and denied its cross motion to dismiss the complaint for failure to state a cause of action.

The facts, briefly stated, are that the plaintiff, Peoples Savings Bank of Yonkers, N. Y. (Peoples Bank), opened a branch office in this shopping center on April 28, 1954, the official opening date of the shopping center.  Paragraph 30 of the lease agreement between the plaintiff, as lessee, and the defendant County Dollar Corporation's predecessor in title, Cross Properties, Inc., as lessor, contained a covenant which prohibited the lessor, or its successors in title, from renting property in the shopping center to any other tenant for use as a savings bank. The covenant reads: " The landlord is developing a project or development known as the Cross County Center of which the demised premises is a part.  The landlord agrees during the term of this lease not to rent any part of the said buildings so constructed and to be constructed in the said Cross County Center to a tenant for use as a savings bank or a savings and loan association."

Notwithstanding this covenant, Seamen's was granted permission to build and operate a branch office in the shopping center at a location about one minute's walk from the plaintiff's office.  The plaintiff then instituted this action for a permanent

injunction to restrain Seamen's from conducting business within the shopping center.

In answer to the plaintiff's motion for a preliminary injunction, Seamen's cross-moved to dismiss the complaint for failure to state a cause of action. It also submitted a supporting affidavit which alleged that the restrictive covenant was unenforceable.

On May 7, 1973 Special Term handed down its decision upholding the plaintiff's complaint and temporarily enjoining Seamen's from establishing a savings bank in the shopping center. On the following day, May 8, 1973, section 674-a of the Banking Law, entitled "Unlawful undertakings", was enacted; its effective date was September 1, 1973 (L. 1973, ch. 279). The first subdivision thereof reads as follows: "Every undertaking, whether written or oral, express or implied, constituting or contained in a contract heretofore or hereafter entered into, directly or indirectly, between a banking organization, bank holding company, national banking association, federal savings and loan association or foreign banking corporation and the owner of an interest in real property located in the state, which bars such owner from leasing, selling or otherwise disposing of any interest in real property to any other banking organization, bank holding company, national banking association, federal savings and loan association or foreign banking corporation shall be null and void."

With this new weapon in hand, Seamen's moved for a rehearing of the plaintiff's motion and of its own cross motion to dismiss the complaint. Once again an affidavit in support of Seamen's position was submitted to the court. The Special Term rendered a second decision adhering to its original determination granting plaintiff's motion for a preliminary injunction and denying Seamen's cross motion to dismiss the complaint, saying that the attempted retroactive application of section 674-a of the Banking Law was unconstitutional. Pursuant to the provisions of section 71 of the Executive Law and subdivision (b) of CPLR 1012, the Attorney-General of the State of New York intervened to sustain the validity of the statute.

We not only agree with the Special Term order which granted the plaintiff's motion for a preliminary injunction, but we go further and grant summary judgment to the plaintiff and permanently enjoin Seamen's from establishing a savings bank in the area proscribed by the restrictive covenant.

On the one hand the plaintiff argues that the restrictive covenant, which is limited in scope, does not constitute an unlawful restraint and that a retroactive application of the Banking

Law (§ 674-a) does violence to the constitutional limitations which prevent a State from (1) passing any law impairing the obligations of contracts (U. S. Const., art. I, § 10) and (2) depriving any person of property without due process of law (U. S. Const., 14th Amdt., § 1; N. Y. Const., art. I, § 6). On the other hand, Seamen's argues (1) that the limitation clause in the plaintiff's lease is unduly restrictive; (2) that in any event it does not prevent it (Seamen's) from leasing the ground space upon which it [and not the plaintiff's lessor] will erect its own bank; (3) that sections 10 and 29 of the Banking Law, which provide (a) that banks be regulated and (b) that branches be located where they will promote the public convenience and advantage, make the restrictive covenant void and unenforceable; and (4) that the newly enacted section 674-a of the Banking Law is a clear expression of the public will and that its retroactive feature is valid.

Not all agreements which restrain trade are proscribed by statute (General Business Law, § 340). The test is whether the restraint is unreasonable (*Dawn to Dusk* v. *Brunckhorst Co.*, 23 A D 2d 780). The City of Yonkers is the fourth largest city in the State of New York, with a population in excess of 200,000. The Cross County Shopping Center is but a small part of the City of Yonkers and there are many other locations within that city where Seamen's can locate a branch without violating the restrictive covenant in question. Indeed (and this was conceded on the argument of the appeal), there are sites on Central Avenue, only a short distance from the Cross County Shopping Center, but just outside of the restricted area, upon which Seamen's can locate a branch bank. Clearly, therefore, the covenant under review, limited as it is to the lessor's holdings in a small area, is a reasonable restriction.

Seamen's also argues that the restrictive covenant only applies to rentals by the landlord of buildings in the shopping center, but does not preclude it (Seamen's) from leasing land within the restricted area and constructing its own building thereon, as it seeks to do here. The restrictive covenant, which has hereinbefore been set forth verbatim, provides in pertinent part that "the landlord agrees * * * not to rent any part of the said buildings so constructed and to be constructed in the said Cross County Center to a tenant for use as a savings bank or a savings and loan association."

Although restrictive covenants are to be construed strictly against those who formulate and impose them (*Baumert* v.

*Malkin,* 235 N. Y. 115), it is the true intent of the parties that the courts will seek to ascertain and enforce. A covenant is merely a part of a contract. Thus, applying the basic rule that leases, as all contracts, are to be given a fair and reasonable interpretation, the intent of the parties must be ascertained from an examination of the four corners of the instrument (*Bethlehem Steel Co.* v. *Turner Constr. Co.,* 2 N Y 2d 456; *Bovin* v. *Galitzka,* 250 N. Y. 228). As the court said in *Bovin* (*supra,* p. 232):

" The general rule for construing restrictive covenants or conditions contained in a lease is to so construe them as to carry out the intent of the parties. The intent of the parties must be ascertained from an examination of the whole lease, and not from the particular clause alone."

When the lease here is examined as a whole, it seems clear beyond doubt that the plaintiff and its landlord intended to exclude all savings banks, save the plaintiff, from operating within the boundaries of the shopping center. Any other interpretation would defy common sense and emasculate the " guts " of the restriction.

Seamen's next contention, that the restrictive covenant impairs the regulatory powers of the State Banking Department, is without merit. True, banks are subject to regulation and may be located only in places where they will best benefit the public (Banking Law, §§ 10, 29). The mere fact, though, that banking is a regulated business does not equate it with a public utility (see *Central N. Y. Tel. Co.* v. *Averill,* 199 N. Y. 128). Thus, without specific limiting legislation, a bank may not be deprived of its right to enter into a restrictive covenant in reasonable furtherance of the successful operations of its banking business. Furthermore, nothing in section 29 of the Banking Law purports to empower the Superintendent of Banks to place banks in any particular locations. Rather, it confers the power upon the Superintendent to vote affirmatively or negatively upon the proposed location of a bank *if the applicant has the legal right to use that specific location.*

We come now to a consideration of the rights of the plaintiff as they are affected by section 674-a of the Banking Law. That newly enacted statute declares " null and void" all undertakings between banks and real property owners which are designed to bar competing financial institutions from obtaining a location in the owners' real property whether " heretofore or hereafter entered into " (L. 1973, ch. 279; 2 McKinney's

1973 Session Laws, p. 2181).* The question for our determination here is whether the retroactive feature of the statute can pass constitutional muster. Phrased another way, the question is whether the police power of the State can be invoked to destroy the plaintiff's existing contractual property right, a right obtained on November 14, 1952, when the lease was executed, and for which it paid a consideration.

The interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are necessary for the general good of the public, even though contracts previously entered into may thereby be affected, for the constitutional prohibition against legislative impairment of the obligation of contracts is not an absolute (*Matter of Department of Bldgs. of City of N. Y. [Philco Realty Corp.]*, 14 N Y 2d 291). Though the police power, when exercised to protect the lives, health, morals, comfort and general welfare of the people, is generally paramount to any subsisting contractual right, it nevertheless is subject to certain constitutional limitations. This was recognized by the court in *Home Bldg. & Loan Assn.* v. *Blaisdell* (290 U. S. 398, 439), where it said: "Undoubtedly, whatever is reserved of state power must be consistent with the fair intent of the constitutional limitation of that power. The reserved power cannot be construed so as to destroy the limitation, nor is the limitation to be construed

---

* It is noteworthy, however, that the memorandum of the State Department of Banking containing its statement in support of chapter 279, the bill adding section 674-a to the Banking Law (2 McKinney's 1973 Session Laws, p. 2181), argues in terms not applicable to the instant case. Thus, the memorandum says: "Banking institutions desirous of acquiring space in a shopping center or other real estate complex at times seek or receive promises from landlords to exclude by oral or written agreement any competing financial institution from acquiring space in the same complex. Sometimes this arrangement derives from the amount of space being rented but on other occasions it derives from the fact that the bank in question is being asked to finance the complex. In any event, the arrangement creates an exclusive and private commercial preserve. *Generally, such restrictive agreements serve large banks as vehicles of preempting smaller institutions from access to prime space*" (emphasis supplied).

Here, the bank which seeks to take advantage of section 674-a to strike down the covenant between the plaintiff and its landlord is one which, compared to the plaintiff bank, would qualify as a large bank. According to information furnished to us by the New York State Banking Department (and publicly available) the gross asset value of the Seamen's Bank for Savings was $1,437,000,000 as of March 31, 1973, while the gross asset value of Peoples Savings Bank of Yonkers, N. Y. as of the same date was $305,000,000. Thus, the effect of enforcing section 674-a of the Banking Law to void the plaintiff's covenant with its landlord would be to aid a large bank at the expense of a smaller institution, a result directly contrary to that intended by the sponsors of the legislation.

to destroy the reserved power in its essential aspects. They must be construed in harmony with each other. This principle precludes a construction which would permit the State to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them." (See, also, *Worthen Co.* v. *Kavanaugh*, 295 U. S. 56; *Worthen Co.* v. *Thomas*, 292 U. S. 426.)

In the *Worthen* decision first cited just above (p. 60) Judge CARDOZO, speaking for the majority, in striking down a statute adversely affecting the rights of holders of bonds of a municipal improvement district secured by a mortgage, said: "To know the obligation of a contract we look to the laws in force at its making. *Sturges* v. *Crowninshield*, 4 Wheat. 122, 197; *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398, 429. In the books there is much talk about distinctions between changes of the substance of the contract and changes of the remedy. *Von Hoffman* v. *Quincy*, 4 Wall. 535; *Louisiana* v. *New Orleans*, 102 U. S. 203; *Barnitz* v. *Beverly*, 163 U. S. 118; cf. *Home Building & Loan Assn.* v. *Blaisdell, supra*, at pp. 429, 434, where the cases are assembled. The dividing line is at times obscure. There is no need for the purposes of this case to plot it on the legal map. Not even changes of the remedy may be pressed so far as to cut down the security of a mortgage without moderation or reason or in a spirit of oppression. Even when the public welfare is invoked as an excuse, these bounds must be respected. *W. B. Worthen Co.* v. *Thomas*, 292 U. S. 426, 433, distinguishing *Home Building & Loan Assn.* v. *Blaisdell, supra*. We state the outermost limits only. In stating them we do not exclude the possibility that the bounds are even narrower. The case does not call for definition more precise. A catalogue of the changes imposed upon this mortgage must lead to the conviction that the framers of the amendments have put restraint aside."

In the instant case "the public welfare" is invoked as an excuse retroactively to strike down the covenant in question. The fact, however, is that such a construction would merely act as a license to defendant Seamen's to combine with the plaintiff's landlord to destroy the plaintiff's right, acquired by contract for a valid consideration, to have the exclusive privilege of operating a savings bank in the shopping center, without any claim that the "public welfare" would in any way be harmed by remitting defendant Seamen's to the creation of savings bank facilities in premises adjacent to the shopping center which, as we here noted, are unquestionably available.

In *Worthen Co.* v. *Thomas* (292 U. S. 426, *supra*) Chief Justice HUGHES, after noting that while *Home Bldg. & Loan Assn.* v. *Blaisdell* (290 U. S. 398, *supra*) stood for the proposition that the constitutional prohibition against the impairment of the obligation of contracts did not make it impossible for the State, in the exercise of its essential reserved power, to protect the vital interests of its people, said (p. 433): "But we also held that this essential reserved power of the State must be construed in harmony with the fair intent of the constitutional limitation, and *that this principle precluded a construction which would permit the State to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them*" (emphasis supplied).

The test then is whether the legislation which affects a contract is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end. So tested, we find that the statute is constitutionally invalid when applied retroactively under the circumstances of this case, for no emergency has been shown warranting such application. To give it that effect here would permanently, and without compensation, destroy a valuable property right possessed by the plaintiff.

It seems clear, therefore, that the order appealed from should not be disturbed insofar as it denied defendant Seamen's cross motion to dismiss the plaintiff's complaint. However, from the affidavits submitted it is clear that the only dispute between the parties is one of law and that there are no issues of fact for determination. In such a situation, CPLR 3211 should be utilized to end this litigation. Subdivision (c) of that section empowers the court on any motion under the section, whether to dismiss a cause of action under subdivision (a) or a defense under subdivision (b), to "treat" the motion as one for summary judgment. The rationale behind the section is that if the proof adduced is as complete as it would be on a summary judgment motion under CPLR 3212 and the court is able to determine that there are no genuine factual issues, summary judgment should not be withheld merely because the motion was not made for that purpose. Subdivision (b) of CPLR 3212 permits the court, on a summary judgment motion, to grant it instead to the movant's adversary, even though the latter did not request such relief, and the exercise of that right is not limited to the court at Special Term or Trial Term, but may take place at the appellate level as well (*Freedom Discount Corp.* v. *McMahon*, 38 A D 2d 947; see, also, *Wiseman* v. *Knaus*, 24 A D 2d 869).

Accordingly, the order under review should be modified, on the law, by granting summary judgment to the plaintiff enjoining defendants during the term of the plaintiff's lease, from conducting business as a savings bank in the shopping center in question and, as so modified, the order should be affirmed, with $20 costs and disbursements to the plaintiff against defendant Seamen's.

HOPKINS, Acting P. J., MARTUSCELLO, BRENNAN and MUNDER, JJ., concur.

Order of the Supreme Court, Westchester County, dated September 4, 1973, modified, on the law, by adding thereto a provision granting summary judgment to plaintiff enjoining defendants, during the term of plaintiff's lease in premises in the Cross County Shopping Center in the City of Yonkers, from conducting business as a savings bank in said shopping center and, as so modified, order affirmed, with $20 costs and disbursements to plaintiff against defendant the Seamen's Bank for Savings.