**Vermont National Bank v. Chittenden Trust Company, The Merchants Bank and Lake Realty, Inc.**

[465 A.2d 284]

No. 82-441

Present: Underwood, J., Barney, C.J. (Ret.), Specially Assigned, and Keyser, Daley and Larrow, JJ. (Ret.), Specially Assigned

Opinion Filed July 27, 1983

258

*Douglas C. Pierson* and *James W. Coffrin* of *Pierson, Affolter & Wadhams*, Burlington, for Plaintiff-Appellee.

*Stevens & Clark*, Winooski, for Defendant-Appellant Chittenden Trust Company.

*Matthew I. Katz* of *Latham, Eastman, Schweyer & Tetzlaff*, Burlington, for Defendants-Appellees Lake Realty, Inc. and Merchants Bank.

**Barney, C.J.** (Ret.), Specially Assigned. Seeking to enforce a restrictive covenant in its lease, plaintiff Vermont National Bank [Vermont National] brought this action to enjoin defendant Lake Realty, Inc. [Lake Realty] from leasing space in the Champlain Mill shopping center in Winooski, Vermont, to defendants Chittenden Trust Company [Chittenden] and The Merchants Bank [Merchants]. By order dated September 10, 1982, the court below issued an injunction prohibiting the defendants from leasing or operating any competitive banking facilities in the Mill until March 31, 1984, when plaintiff's lease term expires. Defendant Chittenden appeals, raising numerous grounds for error, while defendants Merchants and Lake Realty contest the result on a more limited basis. In addition, plaintiff Vermont National has cross-appealed, seeking to extend the injunction beyond its current lease term, and to expand its scope.

Viewing the evidence in the light most favorable to plaintiff as the prevailing party, *Lanphere* v. *Beede*, 141 Vt. 126, 128–29, 446 A.2d 340, 341 (1982), the facts are as follows. The Winooski Real Estate Trust, not a party to this action, undertook to develop in three phases the Riverside Renewal Area of Winooski into a shopping area. The Trust, as developer, was interested in locating a branch bank in the second phase portion of the area. As an incentive, it offered plaintiff Vermont National a five-year lease with a clause binding the lessor to rent no other space in the shopping area to any other bank for a period of five years. At the end of that five-year period, Vermont National had the option of purchasing the site, the deed to contain an ongoing covenant of exclusivity. In April of 1979,

plaintiff agreed to lease premises in the second phase portion of the shopping area, and upon that site constructed a bank building which currently houses its Winooski operations. The five-year lease has not yet expired and the purchase, although unquestionably intended, has not yet occurred.

The conflict arose when a third portion of the shopping area, known as the Champlain Mill [the Mill], was sold in October of 1979 to a second developer, defendant Lake Realty. Although the restrictive covenant in plaintiff's lease was known to Lake Realty and was, in fact, included in the deed of transfer, Lake Realty proceeded nevertheless to lease space in the Mill portion of the shopping area to the two defendant banks. In September of 1981, the Vermont Commissioner of Banking and Insurance issued Certificates of General Good, granting to the defendant banks permission to open branch offices in the Mill, whereupon the banks commenced banking operations. On September 21, 1981, plaintiff brought suit against the three defendants to enforce its rights under the restrictive covenant. The lower court decided generally in favor of the plaintiff, enjoining the defendant banks from conducting business in the Mill. The court make extensive and careful findings of fact and conclusions of law involving a number of issues. These issues are now before us on appeal, thereby mandating that our review be equally comprehensive.

Defendant Chittenden raises four arguments on appeal: (1) that the restrictive lease covenant violates Vermont public policy and is therefore void and illegal; (2) that the court erroneously admitted and relied upon hearsay evidence concerning the existence of other available real estate surrounding the Mill property; (3) that the court erroneously refused to admit evidence regarding plaintiff's failure to disclose the existence of its restrictive covenant to the U.S. Comptroller of Currency; and (4) that the court erroneously granted plaintiff's requested relief, notwithstanding plaintiff's failure to meet an alleged condition precedent.

Plaintiff counters defendant Chittenden's claims of error, and in its cross-appeal argues: (1) that the court erred in limiting the injunctive period to the lease term; and (2) that automatic teller machines [ATMs] operated by defendant Merchants were erroneously excepted from the scope of the court's injunction order and should have been prohibited as well.

The remaining defendants professed partial satisfaction with the court's order, but "having been drawn into this appeal . . . contend that the trial court erred in some respects." Specifically, they maintain: (1) that the injunctive relief correctly ends with the lease expiration; (2) that ATMs were correctly excepted from the injunctive order; and (3) that the court failed to make adequate findings regarding plaintiff's fulfillment of the alleged condition precedent in its lease.

The first and principal issue raised by Chittenden relates to the policy concerns inhering in the enforcement of restrictive covenants limiting competition between banks. There is a generalized concern that expresses itself in various governmental policies, some being part of decisional and statutory law, against combinations and agreements that operate to restrain or encumber trade. See, e.g., *State* v. *Heritage Realty,* 137 Vt. 425, 407 A.2d 509 (1979); The Consumer Fraud Act, 9 V.S.A. § 2453; The Sherman Anti-Trust Act, § 1, 15 U.S.C. § 1 (1974); The Clayton Act, § 3, 15 U.S.C. § 14 (1914); The Federal Trade Commission Act, § 5(a)(1), 15 U.S.C. § 45(a)(1) (1960). The interests of the consumer in goods and services are seen as better served by competitive forces in the market place, and contracts and agreements that represent common action between businesses to remove the discounting effect of price challenge in arms length purchase and sale are not only not favored, but may be conspiratorially illegal.

■■ However, it is a far cry from that policy to the restrictive covenant at issue here. It is well established that restrictive covenants in leases relating to land use are enforceable. *Albright* v. *Fish,* 138 Vt. 585, 422 A.2d 250 (1980); *McDonough* v. *W. W. Snow Construction Co.,* 131 Vt. 436, 306 A.2d 119 (1973). Moreover, the geographic area here involved is neither industry-wide nor even community-wide, but is measured in a few city blocks. Restraints triggering policy concerns are of much broader scope, requiring real impact on the whole industry, or upon areas significant enough to allow the benefited business to operate independently of competitive pressures. See, e.g., *Optivision, Inc.* v. *Syracuse Shopping Center Associates,* 472 F. Supp. 665, 677–78 (N.D.N.Y. 1979); *Elida, Inc.* v. *Harmor Realty Corp.,* 177 Conn. 218, 225–26, 413 A.2d 1226, 1232 (1979); see generally *Brown Shoe Co.* v.

*United States,* 370 U.S. 294 (1962) ; *Chicago Board of Trade* v. *United States,* 246 U.S. 231 (1918). There is certainly no such impact here, nor is there cited to us any case that so holds.

On the contrary, restrictive covenants in shopping center leases have, for the most part, been found not to restrain competition unreasonably and, in fact, have been found to be consistent with the public interest. See, e.g., *Valley Properties, Inc.* v. *King's Department Stores of Tewksbury, Inc.,* 505 F. Supp. 92 (D. Mass. 1981) ; *Optivision, Inc.* v. *Syracuse Shopping Center Associates, supra; Borman's Inc.* v. *Great Scott Super Markets, Inc.,* 433 F. Supp. 343 (E.D. Mich. 1975) ; *Whitinsville Plaza, Inc.* v. *Kotseas,* 378 Mass. 85, 390 N.E. 2d 243 (1979) ; *Pensacola Associates* v. *Biggs Sporting Goods Co.,* 353 So. 2d 944 (Fla. App. 1978) ; *Parker* v. *Lewis Grocer Co.,* 246 Miss. 873, 153 So. 2d 261 (1963) ; see also Note, *Restrictive Covenants in Shopping Center Leases,* 34 N.Y.U. L. Rev. 940 (1959).

From this general contention Chittenden moves to an argument that because 8 V.S.A. § 1 contains a statement encouraging competition among banks and financial institutions, as part of the state regulatory policy of such institutions, restrictive covenants in bank leases are necessarily illegal per se. Moreover, Chittenden argues, since the means for effectuating this policy is through the Commissioner's power to issue Certificates of Public Good to banks seeking to open branch offices, 8 V.S.A. § 651, and since the Commissioner did issue such Certificates to the defendant banks in this case notwithstanding Vermont National's objection based on the restrictive lease provision, the lease provision contravenes state policy. In so arguing, however, Chittenden relies more on the literal meaning of the words than their substance.

In the first place, § 1 is merely a broad policy statement of the legislative purpose for regulating the banking and insurance industry:

> The legislative policy of this state is to promote and maintain the solvency and liquidity of financial institutions doing business in the state, to regulate their affairs in the interests of financial order and stability, to encourage competition among them, and to protect the public

against unfair and unconscionable lending and insuring policies.

8 V.S.A. § 1. Clearly, this section directs the regulatory authority to exercise its powers in ways that will not foster the growth of banking monopolies. Mergers and even branch banking, if unsupervised, can lead to the absorption of small banks and the concentration of the banking business in so few institutions that the competitive effect of customer shopping is lost through reduction of consumer choice. However, no such concern is present in the circumstance before us, and nothing in that statutory scheme indicates that the Legislature intended to exclude private lease and deed restrictions such as the one at issue in this case.

In a factually identical case, *People Savings Bank* v. *County Dollar Corp.*, 43 A.D.2d 327, 351 N.Y.S.2d 157 (1974), the New York Appellate Division affirmed summary judgment in favor of the lessee bank and enforced, by injunction, a restrictive covenant in a lease which prohibited the lessor from renting property in a shopping center to any other tenant for use as a savings bank. The court rejected the argument that the restriction was unreasonable by holding that the shopping center was:

> but a small part of the City of Yonkers and there are many other locations within that city where Seamen's can locate a branch without violating the restrictive covenant . . . . [T]he covenant under review, limited as it is to the lessor's holdings in a small area, is a reasonable restriction.

*Id.* at 330, 351 N.Y.S.2d at 161. Ruling that such a restrictive covenant did not violate the "public welfare," the court further refused retroactively to apply a later provision of the New York banking law prohibiting such covenants:

> [S]uch a construction would merely act as a license to defendant Seamen's to combine with the plaintiff's landlord to destroy the plaintiff's right, acquired by contract for a valid consideration, to have the exclusive privilege of operating a savings bank in the shopping center, without any claim that the "public welfare" would in any way be harmed by remitting defendant Seamen's to the creation

of savings bank facilities in premises adjacent to the shopping center which . . . are unquestionably available.

*Id.* at 333, 351 N.Y.S.2d at 164.

The New York court went on to discuss the limited relevance of a regulatory provision of the New York banking law:

True, banks are subject to regulation and may be located only in places where they will best benefit the public . . . . The mere fact, though, that banking is a regulated business does not equate it with a public utility . . . . Thus, without specific limiting legislation, a bank may not be deprived of its right to enter into a restrictive covenant in reasonable furtherance of the successful operations of its banking business. Furthermore, nothing in . . . the Banking Law purports to empower the Superintendent of Banks to place banks in any particular locations. Rather, it confers the power upon the superintendent to vote affirmatively or negatively upon the proposed location of a bank *if the applicant has the legal right to use that specific location.*

*Id.* at 331, 351 N.Y.S.2d at 162 (emphasis in original).

Defendant Chittenden attempts to distinguish the New York case by contrasting that state's banking policy with Vermont's policy. However, New York's policy, set forth below, is virtually identical in its stated purpose to that of Vermont:

It is hereby declared to be the policy of the state of New York that the business of all banking organizations shall be supervised and regulated through the banking department in such manner as to insure the safe and sound conduct of such business, to conserve their assets, to prevent hoarding of money, to eliminate unsound and destructive competition among such banking organizations and thus to maintain public confidence in such business and protect the public interest and the interests of depositors, creditors, shareholders and stockholders.

New York Banking Law § 10 (McKinney 1971). Chittenden asserts that New York's policy, "to eliminate unsound and destructive competition" is at loggerheads with Vermont's pol-

icy "to encourage competition." However, since it is beyond dispute that Vermont's policy does not favor unsound and destructive competition, see 9 V.S.A. § 2453; *Wilder* v. *Aetna Life & Casualty Insurance Co.,* 140 Vt. 16, 18, 433 A.2d 309, 310 (1981), the two policy statements are not inconsistent, and the sound reasoning of the New York court is compelling.

■ For these reasons we hold that the lease provision was properly upheld as lawful and enforceable against these defendants. That being so, Chittenden's claims of error relating to any duty of plaintiff to disclose the restrictive covenant to the Comptroller of Currency were correctly determined to have no place in this litigation.

■ Nor is there merit in Chittenden's second claim, that a finding central to the case was based on inadmissible hearsay and must be reversed. The disputed finding states that:

> There is abundant commercial real estate immediately surrounding the shopping center where banking facilities could be established.

A review of the record indicates that there was ample competent evidence upon which the lower court could base this finding, without relying upon the alleged hearsay testimony. Defendant Chittenden's Exhibit C, a map of Winooski's Central Business District, shows much commercial real estate surrounding the shopping center. Moreover, Chittenden's Vice-President acknowledges in his testimony the existence of the neighboring real estate. The finding is supported and without error.

The defendants also argue that the restrictive lease provisions should not apply to them, since plaintiff allegedly failed to comply with other portions of the lease when full performance was a condition precedent. This argument rests on the fact that when plaintiff erected its building according to a one-story design, the state, as part of its energy conservation requirements, directed plaintiff to lower the ceiling level in the banking lobby. The "attic," so formed, is an empty space, and although it is not so used, it has the potential for conversion into a storage area. From this it is argued that the lease provision limiting plaintiff's use to one story has been violated,

and that therefore plaintiff is estopped from enforcing its rights under the restrictive covenant.

How this so-called lease violation is of help to the defendants is not disclosed, since the landlord/lessor is making no effort to claim a violation of the lease. Clearly, the alteration can be waived, if it is a violation. Since it was the unexpected interjection of sovereign power that brought about the change, it can as well be argued that the sovereign has thereby directed a modification of the lease to that extent, a circumstance clearly not contemplated by either contracting party. As it is doubtful that the lessor could sustain a claim of violation here and, in any event, is making no such attempt, and further, since any remedy need not include invalidation of the restrictive clause, there is nothing for the defendants here.

We turn now to plaintiff's claims contained in its cross-appeal. Plaintiff argues that since the defendant banks have wrongfully had the advantage of doing business in the shopping center during a portion of the lease period, plaintiff should be awarded a corresponding extension of the lease. The trial court refused this relief, correctly.

To begin with, such relief runs in part against the Winooski Real Estate Trust, which is not even a party to this action. Furthermore, although equity on occasion fashions relief in kind as a remedy, such a judgment rests in the chancellor's determination that a party cannot be compensated by money damages, the favored disposition in the law. *Poulin* v. *Town of Danville,* 128 Vt. 161, 166, 260 A.2d 208, 211 (1969). Nothing appears from the record to demonstrate that such relief was in fact sought by the plaintiff below, or that any proof in support of such a claim was introduced. The chancellor's ruling denying an alteration of the terms of the lease agreement must be sustained.

Plaintiff's next claim is that the restrictive covenant was meant to include ATMs within the lease prohibition, and that the trial court wrongfully limited the injunction to exclude such machines. It is hornbook law that construction of contract terms is a matter of law and not a factual determination. *Feinstein Brothers* v. *L. Z. Hotte Granite Co.,* 123 Vt. 167, 171, 184 A.2d 540, 542 (1962). This Court, therefore,

must review for itself the proper legal effect of contract language. In this particular we differ with the trial judge on the construction of the following exemption from the restrictive clause:

> It is understood and agreed, however, that the provisions of the immediately preceding sentence shall not be violated on account of the use of any premises in the Shopping Center for electronic fund transfer and/or check cashing operations in conjunction with the sale of merchandise and/or services at retail . . . .

The exception, in paragraph 35 of the lease, immediately followed the restrictive clause in that same paragraph prohibiting the leasing of any other premises in the Shopping Center "for use as a commercial bank, savings bank, federal savings and loan association, credit union or similar financial institution or any free-standing teller facility connected with any such institution."

Since the defendant Merchants had installed a free-standing teller facility or ATM, as the chancellor found, plaintiff brought a contempt action specifically seeking to have that machine removed. Relief was denied below on the grounds that the reference to check cashing and electronic fund transfer was ambiguous, and should be construed against the restriction. We do not find it so, and rule that the language clearly separates fund transfers in connection with retail merchandising from free-standing teller machines or ATMs. Therefore, the operation by Merchants of their ATM falls within the prohibition and must be enjoined.

Lastly, in conjunction with the declaratory aspects of the pleadings, plaintiff asks to set aside the lower court's ruling that the restrictive provision has no life beyond the lease term, and to state its measure. It must be kept in mind that there is, as yet, no operative deed, since the lease term is not yet up. Thus, without the terms and limitations spelled out in the actual document, any judgment as to validity can only be improperly speculative.

Since there are legal grounds for holding such deed restrictions valid if properly limited, say, to the time the plaintiff uses the premises for banking, or for a finite term, or sub-

ject to such other conditions to render the breadth and duration not unreasonable, the order of the lower court restricting the term of the restrictive clause to the term of the lease as a matter of law was error. However, since the deed to be given is not before us, nor, presumably, in existence, and since the grantor of that deed is not a party to this suit, our decision can go no further. The matter will be remanded for modification of the injunctive order to comply with our determination of its applicability to freestanding teller machines as well.

*Cause remanded for modification of the injunctive order in the particulars required by the opinion, and upon such modification, the judgment below is affirmed.*