## Dartmouth Savings Bank and General Housing of New England, Inc. v. F.O.S. Associates and Rutland Savings Bank

[486 A.2d 623]

No. 83-002

Present: Billings, C.J., Hill and Peck, JJ., and Larrow, J. (Ret.) and Costello, D.J. (Ret.), Specially Assigned

Opinion Filed August 24, 1984

Motion for Reargument Denied December 13, 1984

*Stebbins, Bradley, Wood & Harvey, P.A.,* Norwich, for Plaintiffs-Appellees.

*Divoll & Doores, P.C.,* Bellows Falls, for Defendants-Appellants.

**Peck, J.** Defendants appeal a judgment rendered against them by the Windsor Superior Court in an action for breach of contract. They contend that the court erred in its construction of the contract, and deny any liability for breach. We agree and reverse.

At all times material to this case, defendant F.O.S. Associates (F.O.S.) was engaged in the construction of condominium units at Okemo Mountain in Ludlow, Vermont. For that purpose, F.O.S. obtained construction mortgage financing from defendant Rutland Savings Bank (Rutland) in the summer of 1979. F.O.S. engaged Sutherland Associates, Inc. (Sutherland)

as the general contractor on the project. This was accomplished by two separate contracts: a construction agreement and a site improvement agreement, which were executed on July 16, 1979, and July 23, 1979, respectively. In turn, Sutherland employed plaintiff General Housing of New England, Inc. (General Housing) as a subcontractor to supply labor and materials in erecting shells for some of the condominium units.

Sutherland and General Housing needed to obtain advance funding to begin work on the project. As is customary in the contracting business, they were to be paid later in increments as each phase of construction was completed and approved by the construction mortgage lender. See, e.g., Reitz, *Construction Lenders' Liability to Contractors, Subcontractors, and Materialmen*, 130 U. Pa. L. Rev. 416 (1981); Hall, *How to Build Lender Protection Into Construction Loan Agreements*, 6 Real Estate L. J. 21 (1977). They both financed their start-up costs through plaintiff Dartmouth Savings Bank (Dartmouth).

The arrangement between Sutherland and General Housing consisted of a series of separate contracts, each covering one of five single six unit condominium buildings numbered 18 through 22. Appended to each of these contracts was a face sheet containing a provision that authorized payment under the contracts to F.O.S., Sutherland, General Housing and Dartmouth jointly. This authorization was agreed to by F.O.S. and accepted by Rutland. Plaintiff styles this provision as a "set aside" agreement. For purposes of further discussion, it will be referred to as the "General Housing set aside agreement." After the last of the Sutherland-General Housing contracts had been executed, F.O.S., Sutherland, Dartmouth and Rutland entered into a separate and distinct contract entitled "Lender Set Aside Agreement." For purposes of further discussion, this contract will be referred to as the "lender set aside agreement."

The controversy underlying this action arose on March 25, 1980, when Sutherland filed for bankruptcy. At that time, the outstanding balance on its loans from Dartmouth was $49,571.89 with interest accruing at a rate of fourteen percent per annum from October 25, 1979. As of March 25, 1980, Sutherland also had an unpaid balance of $32,357.00 under its contract with General Housing for building number 22. It was then that Dartmouth became aware that nearly all of the

funds available under the F.O.S. construction mortgage with Rutland had been exhausted without enough remaining to satisfy Sutherland's debts. Dartmouth discovered that over $140,000 had been paid out of the F.O.S. construction mortgage in checks that did not include Dartmouth as a payee. Dartmouth brought suit to recover its loans on the theory that all monies paid out from the mortgage loan were required to pass through Dartmouth's hands under the two set aside agreements, and that defendants' failure to abide by its terms constituted an actionable breach.

Defendants' position is that the lender set aside agreement only required payments made for the *construction of the units* to be made out to Dartmouth jointly. They contend that monies used for site improvement under the site agreement were not subject to the terms of the lender set aside agreement. Plaintiffs prevailed at trial and recovered the full amount of Sutherland's debts.

Although reference is made in the briefs to the General Housing set aside agreement, it is the terms and scope of the lender set aside agreement that are chiefly in dispute. However, there is some ambiguity in the court's judgment order that must be addressed before we proceed on the merits. In that order, judgment for Dartmouth on its claim for the unpaid balance on Sutherland's debt is expressly predicated on defendants' liability under the lender set aside agreement. The judgment for General Housing and Dartmouth under Sutherland's contract with General Housing, however, refers to neither of the set aside agreements mentioned above. As previously stated, the parties chiefly argued liability under the lender set aside agreement. Reference to the General Housing set aside agreement was tangential only, which appears to leave open the question of which agreement formed the basis of defendants' liability for the Sutherland-General Housing contract.

This confusion is perhaps due to a patent inconsistency between finding number 10 and conclusion number 19 of the court's order. Finding number 10 provides:

> Although General Housing claims an independent, express contractual relationship with F.O.S. based on F.O.S.'s execution of the set-aside agreement for condo-

minium No. 22, we find that it was the intention of the parties to bind F.O.S. only with respect to the method of payment, i.e., the set-aside arrangement. In the absence of other confirming evidence, the placement of Alan Senie's signature over the line marked "Purchaser" is insufficient evidence of an intent to bind F.O.S. as a principal or guarantor of the contract between General Housing and Sutherland. *We find that it was the intention of the parties that Sutherland alone was to be responsible for the payment of monies owed General Housing.* (Emphasis added.)

Conclusion number 19 provides:

F.O.S. is also liable to General Housing for breach of contract by occupying Condominium No. 22 before paying General Housing the balance owed to it. There was no contract modification or waiver or estoppel by General Housing that would mitigate this obligation.

These two provisions are in direct conflict and cannot be reconciled. Although the parties did not undertake to clear up this inconsistency, we are compelled to resolve this issue in order to render a dispositive judgment on the merits.

▇▇▇▇ It is the nature of appellate review that the misapplication of law to supported or unchallenged findings is subject to correction on appeal. *Bolduc* v. *Coffin*, 133 Vt. 67, 69, 329 A.2d 655, 656 (1974). Moreover, the legal effect of a written instrument is a matter of law determinable at the appellate level. *Stevens* v. *Cross Abbott Co.*, 129 Vt. 538, 545, 283 A.2d 249, 254 (1971). The question presented here is whether defendants are liable for breach under the General Housing set aside agreement on the basis of the court's findings. The matter is therefore clearly within our scope of review. Ordinarily, a trial court's conclusions will be upheld where they are supported by the findings. *Dessureau* v. *Maurice Memorials, Inc.*, 132 Vt. 350, 353, 318 A.2d 652, 654 (1974). However, conclusions not supported by the findings cannot stand. *Stevens* v. *Cross Abbott Co., supra;* see *Steele* v. *Steele*, 142 Vt. 112, 114–15, 453 A.2d 400, 401 (1982).

Finding number 10 is couched as a conclusion of law insofar as it absolves defendants of any contractual liability for pay-

ment under the General Housing contract. Based on the facts also contained within that finding and the supporting evidence, we believe it embodies the correct statement of the law. The General Housing set aside agreement provided as follows:

> We hereby authorize the Rutland Savings Bank of Rutland, Vermont, to issue checks or drafts payable to the Purchaser, General Housing of New England Inc. and Dartmouth Savings Bank, in payment of the foregoing balance or balances. We the Purchasers hereby agree to the foregoing terms and conditions.

F.O.S. and Sutherland signed as purchasers.

■ This agreement, standing alone, creates no contractual duty on the part of either F.O.S. or Rutland to write payment checks in a certain way. It merely *authorizes* Rutland to do so. Duty and authority are distinguished in that the term duty denotes an obligation that is compulsory while authority denotes capacity and is permissive, as in a matter of right. *Kerrigan* v. *Errett,* 256 N.W.2d 394, 399 (Iowa 1977). In a case involving a construction contract which gave a bank an election as to the manner of payment, the Pennsylvania Supreme Court held that "[t]he *right to pay* is vastly different from the *duty to pay*; only the latter can be enforced." *Demharter* v. *First Federal Savings & Loan Association,* 412 Pa. 142, 153, 194 A.2d 214, 219 (1963). Accordingly, conclusion number 19 is without factual or legal support and must be set aside. Whatever contractual duty defendants owed to General Housing must have arisen out of the lender set aside agreement, of which, as the court correctly found, General Housing was an intended beneficiary.*

The lender set aside agreement was essentially a means of using the construction mortgage funds committed by Rutland

---

* General Housing did not sign the lender set aside agreement. However, that agreement specifically made reference to the manner of payment specified in the General Housing set aside agreement and incorporated it by reference. General Housing was therefore an intended creditor beneficiary of defendants' obligation to Dartmouth, and thus entitled to enforce that obligation. *Pike Industries, Inc.* v. *Middlebury Associates,* 140 Vt. 67, 70–71, 436 A.2d 725, 727 (1981), *cert. denied,* 455 U.S. 947 (1982).

as security for the loans extended by Dartmouth. This was achieved by requiring certain funds disbursed by Rutland during construction to be paid out in checks naming Dartmouth as a joint payee. In this manner, Dartmouth could monitor the flow of funds expended on the project to ensure that part of these funds could be credited to its debtors' accounts.

The preamble of the lender set aside agreement specifically refers to the "Construction Agreement dated July 16, 1979." References to that agreement are also made in the body of the contract. At no time does the contract mention the site improvement agreement dated July 23, 1979. The site improvement agreement predated the lender set aside agreement of September 6, 1979, by 45 days, and must certainly have been within the minds of the parties at the time the latter was executed.

The relevant provisions of the two documents show clearly that the only payments subject to the set aside agreement were those "made in accordance with the payment schedule" established in paragraph four of the construction agreement.

■ "[C]onstruction of contract terms is a matter of law and not a factual determination. . . . This Court, therefore, must review for itself the proper legal effect of contract language." *Vermont National Bank* v. *Chittenden Trust Co.*, 143 Vt. 257, 266–67, 465 A.2d 284, 290 (1983). As we did in *Vermont National Bank, supra,* we must differ with the lower court's construction of the pertinent contract provisions.

■■ " 'The law will presume that the parties meant, and intended to be bound by, the plain and express language of their undertakings.' " *Trustees of Net Realty Holding Trust* v. *AVCO Financial Services of Barre, Inc.*, 144 Vt. 243, 246–47, 476 A.2d 530, 532 (1984) (quoting *Vermont State Colleges Faculty Federation* v. *Vermont State Colleges*, 141 Vt. 138, 144, 446 A.2d 347, 350 (1982)). The lender set aside agreement clearly declares that its provisions are limited by the terms of the construction agreement alone. The site improvement contract was a separate and distinct agreement. Although it is unclear from the court's findings, the lower court may have believed it to have merged with the construction agreement. Such a position would be untenable. The construction

agreement expressly stated that it "constitut[ed] the entire agreement of the parties," and that site work was to be performed under a "separate contract." The theory of merger of contract only applies to successive agreements that cover the same subject matter and contain inconsistent terms. Under these conditions, a prior agreement is deemed to merge into that which is more recent. *Hagerbaumer* v. *Hagerbaumer Bros.*, 208 Neb. 613, 617, 305 N.W.2d 4, 6–7 (1981); *Nicholson* v. *Hardwick*, 49 Or. App. 169, 175, 619 P.2d 925, 928 (1980); *Nib Foods, Inc.* v. *Mally*, 70 Mich. App. 553, 560, 246 N.W.2d 317, 321 (1976); see *Chappell* v. *Northern Realty, Inc.*, 128 Vt. 476, 479, 266 A.2d 453, 456 (1970). Because of the difference in the subject matter between the two contracts, and the lack of inconsistency, the doctrine is inapposite here.

Accordingly, the clear, unambiguous language of the lender set aside agreement evinces an intention by the parties that only those payments made for the various phases of construction, rather than site work, were to be channeled through Dartmouth. It is that intent by which we are governed. *Karlen Communications, Inc.* v. *Mt. Mansfield Television, Inc.*, 139 Vt. 615, 617, 433 A.2d 290, 292 (1981). The court below found that, of the $773,299.60 total advanced by Rutland under the F.O.S. mortgage, $676,643.82 was disbursed in checks payable to Dartmouth. The evidence showed that the total billed to F.O.S. by Sutherland for construction work alone was $632,575.53. Thus, defendants exceeded their obligation to Dartmouth under the express terms of the set aside agreement. That Dartmouth failed to heed the express language of the contract and take steps to credit its accounts from the payments it received was no fault of the defendants.

█ We conclude that the court erred in holding defendants in breach of the lender set aside agreement, and the judgment must, therefore, be reversed.

*The judgment for plaintiffs is reversed, and judgment is entered for defendants.*