The GRAND UNION COMPANY, Plaintiff-Appellee-Cross-Appellant,

v.

CORD MEYER DEVELOPMENT COMPANY and King Kullen Grocery Company, Inc., Defendants-Appellants-Cross-Appellees.

Nos. 689, 690, 813, Docket 84–7768, 84–7772 and 84–7774.

United States Court of Appeals, Second Circuit.

Argued Feb. 7, 1985.

Decided May 13, 1985.

Alan Goldston, New York City (Paskus, Gordon & Hyman, New York City, Steven Mairella, New York City, of counsel), for plaintiff-appellee-cross-appellant.

John R. Armentano, Mineola, N.Y. (Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, P.C., Mineola, N.Y., Steven L. Herrick, Mineola, N.Y., of counsel), for defendants-appellants-cross-appellees.

Before LUMBARD, MANSFIELD, and PIERCE, Circuit Judges.

LUMBARD, Circuit Judge:

All parties appeal from an August 8, 1984 judgment of the Eastern District of New York, Leonard D. Wexler, Judge, which, based on the court's construction of an ambiguous contract provision: 1) nullified a lease between Cord Meyer Development Co. and King Kullen Grocery Co.; 2) enjoined Cord Meyer from negotiating with any supermarket wishing to lease space in its Bay Terrace Shopping Center until August 9, 1985 and from entering into a lease with such a supermarket giving the tenant any rights, even for purposes of renovation, prior to February 9, 1986; and 3) directed Cord Meyer to pay Grand Union's costs and attorneys' fees. Each party argues that the court misinterpreted the contract provision at issue. In addition, Cord Meyer asserts that the district court exceeded its authority in granting Grand Union relief.

We agree with Judge Wexler's interpretation of the contract and with the equitable relief he granted. Accordingly, we affirm the judgment of the district court to the extent that it nullified the Cord Meyer-King Kullen lease and restricted Cord Meyer's authority to negotiate and execute a replacement lease. We reverse only that part of the judgment requiring Cord Meyer to pay Grand Union's attorneys' fees.

Grand Union, a supermarket chain, operates a food store in Cord Meyer's Bay Terrace Shopping Center in Bayside, Queens. It operates the store as a successor in interest to Sunrise Supermarkets Corporation under a lease dated September 22, 1958 between Sunrise Supermarkets and Cord Meyer. The original lease commenced February 9, 1960 and ran for 15 years. Article 40 of the lease gave the tenant an option to renew for 10 years under the same conditions but at a higher rent. In 1974, Grand Union exercised that option, extending its lease to February 9, 1985.

Article 39(b) of the lease, as originally drafted, prohibited Cord Meyer from renting any other space in the shopping center "as a supermarket, grocery, fruit, vegetable, dairy and/or non-Kosher butcher" during the term of Grand Union's tenancy. On June 3, 1975 Grand Union and Cord Meyer modified Articles 39(b) and 40. Pursuant to the modification, Grand Union was granted options to renew for two additional five-year terms, and in return Cord Meyer received the right, subject to certain restrictions, to lease, after February 9, 1985, the part of the shopping center then used as a bowling alley or any new structures as a supermarket. The Modification Agreement, which Grand Union claims prohibits Cord Meyer from negotiating with any other supermarkets until August 9, 1984, reads, in relevant part, as follows:

3. Paragraph 40 of the Lease shall be deemed amended so as to give Tenant the right and option to extend the demised term for two additional periods of five (5) years each (the "Extended Terms") on the same terms, provisions and conditions (except that the minimum rental shall be adjusted as provided in Article 40) as contained in the Lease. Tenant may exercise either or both of the said options to extend the demised term by giving to Landlord a written notice thereof not less than six (6) months prior to the scheduled date for termination of the then applicable demised term or first Extended Term. . . .

4. In the event that Tenant exercises either or both of its options for an Extended Term or Extended Terms as set forth in Article [3] hereof, the restrictive covenants in favor of the Tenant and against the Landlord as contained in Ar-

ticles 39(b) and 39(c) of the Lease are hereby modified to permit a supermarket, grocery, fruit, vegetable, dairy, non-kosher butcher, or other store with a selling area of more than 2,000 square feet as a delicatessen, kosher butcher (meat and poultry) or appetizing to be leased by Landlord in the portion of the existing shopping center presently used as a bowling alley or in any new buildings hereafter added to the presently undeveloped portion of the existing shopping center *provided, however, that:*

(a) *Landlord shall not initiate or conduct any negotiations for the leasing or occupancy by Landlord or others concerning any of the aforesaid uses to any person or entity prior to August 9, 1984; and*

(b) None of the aforesaid uses shall commence or be permitted by Landlord to commence prior to February 9, 1985; and

(c) The restrictions against the Landlord and in favor of Tenant as set forth in Article 39(b) and 39(c) shall apply during either or both of the Extended Terms (if options for the same are exercised by Tenant) with respect to the presently existing constructed portions of the shopping center (or any replacements of such existing construction in the shopping center, or any temporary buildings in the presently developed portions of the shopping center) of which the demised premises are a part, except that subject to the conditions of subparagraphs (a) and (b) above, a supermarket may be located in the portion thereof presently used as a bowling alley....

(Emphasis added).

In 1981, Cord Meyer and Grand Union began discussing the possibility of Grand Union's occupying the part of the shopping center then leased as a bowling alley upon the termination, in 1982, of the bowling alley's lease. Those discussions broke down, and Cord Meyer subsequently began negotiations with Waldbaums Supermarkets and then King Kullen for the bowling alley space. On February 14, 1983, Cord Meyer and King Kullen executed a lease, retroactive to February 1, 1983, under which King Kullen was to commence operation of a supermarket in the bowling alley space on February 9, 1985. The lease gave King Kullen immediate possession of the premises for purposes of renovation.

Grand Union responded by filing this lawsuit, under diversity jurisdiction, seeking: 1) an injunction setting aside the lease between Cord Meyer and King Kullen and restraining Cord Meyer from further violating the Modification Agreement; 2) a declaration that Cord Meyer could not lease any space in Bay Terrace to another food store until the expiration of Grand Union's lease; and 3) damages from King Kullen for its tortious interference in the contractual relationship between Grand Union and Cord Meyer. Grand Union alleged that Cord Meyer's lease with King Kullen was void because it was negotiated in violation of subparagraph 4(a) of the 1975 Modification Agreement which, according to Grand Union, absolutely prohibited Cord Meyer from negotiating with any other supermarket until August 9, 1984, the last date under the Modification Agreement for Grand Union to exercise its first renewal option. Grand Union further asserted that Cord Meyer's obligation to refrain from negotiating with other supermarkets was a condition of the modification, under paragraph 4, of Grand Union's exclusive right to operate a supermarket in Bay Terrace. According to Grand Union, because Cord Meyer failed to satisfy that condition, Grand Union retained its exclusive right under the original lease to operate a grocery store in Bay Terrace. Grand Union exercised its first five-year renewal option on July 23, 1984, extending its lease to February 9, 1990.

Cord Meyer and King Kullen moved to dismiss Grand Union's complaint arguing that their negotiations did not violate subparagraph 4(a). According to their interpretation, the prohibition on negotiations was to take effect only upon Grand Union's exercise of a five-year renewal option.

Judge Nickerson, then assigned to the case, severed Grand Union's damage claim against King Kullen and dismissed the other claims, agreeing with Cord Meyer's interpretation of subparagraph 4(a). On appeal, this court reversed and remanded the case for trial, concluding that paragraph 4, taken as a whole, was ambiguous and that, as a result, summary disposition was inappropriate. *Grand Union Co. v. Cord Meyer Development Corp.*, 735 F.2d 714 (2d Cir.1984). The case then went to trial before Judge Wexler to determine the intent of the parties as to the meaning of paragraph 4.

At trial, Alfred J. Swan, Cord Meyer's attorney who was involved in negotiating the Modification Agreement, testified that in 1975, on the instruction of George Meyer, Jr., Cord Meyer's then-President, he informed Grand Union that Cord Meyer would not accept the prohibition on negotiations unless it was limited to take effect only upon Grand Union's exercise of a renewal option. Swan contended that Grand Union accepted that limitation. Supporting Swan's testimony, Cord Meyer introduced a May 9, 1975 letter from Swan to George Meyer, Jr. and John Van N. Meyer, which contained a margin notation reflecting the company's desire to limit the negotiation prohibition. Swan testified that he made the notation during a May 12, 1975 phone conversation with George Meyer.

Swan further testified that during negotiations in 1975, Grand Union never suggested making subparagraph 4(a) a condition the violation of which would cause Cord Meyer to forfeit its right, under paragraph 4, to lease to a second supermarket after February 9, 1985. Cord Meyer also introduced a May 15, 1975 memo, written by Grand Union's chief negotiator, which belied Grand Union's claim that the prohibition on negotiation was intended as a condition.

On the other hand, Irving Hathaway, a retired executive of Grand Union, who was its in-house counsel when the 1975 Modification Agreement was negotiated but who played no direct role in those negotiations,

testified that he understood the agreement to prohibit Cord Meyer from negotiating with other supermarkets until August 9, 1984, regardless of whether Grand Union had exercised a renewal option. Such an arrangement, he asserted, gave Grand Union the opportunity to negotiate with Cord Meyer without competition until August 9, 1984 concerning the much larger bowling alley space. In addition, it insured that any new competitor, unable to begin lease negotiations until August 1984, would be unable to open a new grocery store until at least late 1986 or beyond.

Grand Union introduced several documents from the Cord Meyer files which strongly supported its position that the parties understood that Cord Meyer could not begin any negotiations prior to August 9, 1984. Among these were: 1) an October 7, 1975 memo bearing the initials of George C. Meyer, Jr., but apparently written by Charles G. Meyer, Jr., which stated: "No other market anywhere in shopping center until February 9, 1985, although we may start negotiating after August 9, 1984"; 2) a copy of an unrelated 1978 Agreement between Grand Union and Cord Meyer on which John Meyer had written: "Cannot negotiate for other supermarket in Bowling or existing Shopping Center prior to August 9, 1984"; and 3) an April 7, 1982 letter from John Meyer, Cord Meyer's vice president in 1975, to a real estate broker stating: "I must again advise you that under the constraints of our lease with Grand Union, we are not permitted to negotiate at this time the leasing of property in the Shopping Center to another supermarket." Although Charles Meyer took the stand to testify that his October 7, 1975 memo was in error, John Meyer was not called as a witness.

Hathaway also testified that Grand Union intended subparagraph 4(a), prohibiting Cord Meyer from negotiating with other supermarkets until August 9, 1984, to condition paragraph 4's relaxation of Grand Union's exclusive rights under the original lease. In the event Cord Meyer violated the prohibition, Hathaway testified, it

would forfeit its newly acquired right to rent to a second supermarket.

Based on the conflicting evidence, Judge Wexler, in an August 3, 1984 opinion, concluded that although Cord Meyer sought to restrict the prohibition on negotiations to take effect only upon Grand Union's exercise of a renewal option, Grand Union never agreed to that limitation, and it was never included in the parties' agreement. Further, citing a lack of evidence, he construed the prohibition on negotiations as a covenant, not a condition the violation of which would abrogate Cord Meyer's other rights under the Modification Agreement. The court entered judgment on August 8, 1984 nullifying the lease between Cord Meyer and King Kullen as violative of the 1975 Modification Agreement, permanently enjoining Cord Meyer from negotiating a similar lease before August 9, 1985 and forbidding it from entering into such a lease with an effective date prior to February 9, 1986, and directing Cord Meyer to pay Grand Union's costs and attorneys' fees.

## A. *Construction of Paragraph 4.*

On appeal, all parties argue that the district court misconstrued paragraph 4 of the Modification Agreement. Cord Meyer asserts that the court erred in finding that the parties intended the prohibition on negotiations to take effect prior to Grand Union's exercise of a renewal option. Grand Union, on the other hand, contends that the court erred in declining to construe subparagraph 4(a) as a condition and, accordingly, in failing to declare that Grand Union retains, as a result of Cord Meyer's breach, an exclusive right to operate a supermarket in the Bay Terrace Shopping Center throughout the term of its renewed lease. We find no merit in any of the challenges to the district court's construction of the Modification Agreement.

On our prior review, we found paragraph 4 ambiguous. Although it begins with the phrase "In the event that Tenant exercises either or both of its options," the court was unable to determine from the Modification Agreement alone whether that phrase qualified the entire paragraph, including subparagraph 4(a), or only that part of the paragraph which modified Grand Union's exclusive right to operate a supermarket in Bay Terrace. *Grand Union Co. v. Cord Meyer Development Corp.*, 735 F.2d 714 (2d Cir.1984). Thus, the court remanded for determination of the intent of the parties.

■ At trial, the evidence pertaining to intent was contradictory. Cord Meyer introduced a document indicating it desired the negotiation prohibition to take effect only upon Grand Union's exercise of a renewal option, and its attorney, who had participated in negotiating and drafting the Modification Agreement, testified that Grand Union agreed to such a limitation. Grand Union, however, introduced several statements by high-level Cord Meyer officials, including the vice-president at the time of the negotiations, which indicated that they believed the Modification Agreement absolutely prohibited negotiations until August 9, 1984. Those statements, which Judge Wexler credited, fully support the factual finding that despite Cord Meyer's contrary desire, the parties never agreed to any restrictions on the negotiation prohibition.

It is true that the district court's factual finding is inconsistent with the only testimony offered by anyone intimately involved in negotiating the Modification Agreement. However, contrary to Cord Meyer's assertion, the documentary evidence introduced by Grand Union was highly relevant on the issue of the parties' intent. The statements by high-level Cord Meyer officials concerning their view of the Modification Agreement, especially the notation made by John Meyer, a peripheral participant in the 1975 negotiations, must have reflected their understanding of the arrangement their negotiators had struck with Grand Union in 1975, not merely a detached interpretation of the contractual language. As such, those statements were probative on the issue of intent.

■ We also agree with Judge Wexler's construction of subparagraph 4(a) as a cov-

enant, not a condition. Although, the subparagraph is introduced by the phrase "provided, however," language often associated with conditions, and other parts of the Modification Agreement refer to subparagraph 4(a) as a condition, those factors alone do not establish that the parties intended a condition. *See Stillwell v. Morley,* 26 A.D.2d 740, 740, 272 N.Y.S.2d 193, 195 (3d Dept.1966). Thus, the district court could consider extrinsic evidence of the parties' intent in determining how to characterize the provision.

■ The extrinsic evidence was at best inconclusive. Grand Union's attorney testified that his client wanted the paragraph drafted as a condition and that he believed it had been so drafted, but Cord Meyer countered with testimony that Grand Union never raised the issue of drafting it as a condition. A memo written by Grand Union's lawyer also suggests that the provision was intended as a covenant. In the absence of more compelling evidence that the parties intended to create a condition, the negotiation provision must be construed as a promise or covenant. 5 S. Williston, *A Treatise on the Law of Contracts* § 665 (3d ed. 1961 & Supp.1984).

## B. *Injunctive Relief.*

■ Cord Meyer argues that even if the district court correctly construed the Modification Agreement, it exceeded its authority under New York law, applicable to this diversity case, by nullifying Cord Meyer's lease with King Kullen, by extending for one year Grand Union's exclusive rights under the Modification Agreement and by enjoining Cord Meyer from allowing any other supermarket to take possession of space in Bay Terrace, even for purposes of renovation, prior to February 9, 1986. According to Cord Meyer, Judge Wexler improperly rewrote the Modification Agreement in the guise of enforcing it. We disagree.

Nullification of a lease negotiated in violation of subparagraph 4(a) is certainly a valid means of enforcing that contract provision. *See Peoples Savings Bank of Yonkers v. County Dollar Corp.,* 43 A.D.2d 327, 351 N.Y.S.2d 157 (2d Dept.), *aff'd mem.,* 35 N.Y.2d 836, 362 N.Y.S.2d 864, 321 N.E.2d 784 (1974).

Further, we do not believe that the district court exceeded its power in going beyond mere nullification and restricting Cord Meyer's authority to negotiate and execute a replacement lease. According to the evidence, Grand Union sought a limitation on negotiations, in part, to postpone the effects of the loss of its exclusive right to operate a supermarket in Bay Terrace. By providing that Cord Meyer could not negotiate with other supermarkets until August 9, 1984, Grand Union attempted to insure that no new operator could renovate and open a grocery store until well into 1986 or beyond. The district court's injunction preserved Grand Union's expectations under the Modification Agreement by preventing Cord Meyer and King Kullen from again executing a lease on August 9, 1984 and thereby circumventing the substance of subparagraph 4(a)'s prohibition against negotiations. Although the injunction is broad, it is consistent with the court's equitable power to devise whatever remedy it believes in its discretion "is necessary to make … injured parties whole." *Levitt Corp. v. Levitt,* 593 F.2d 463, 469 (2d Cir. 1979). *See also London v. Joslovitz,* 279 A.D. 280, 282, 110 N.Y.S.2d 58, 59–60 (3d Dept.1952).

## C. *Attorneys' Fees.*

■ Finally, Cord Meyer contends that the district court erred in directing it to pay Grand Union's attorneys' fees. The awarding of attorneys' fees in diversity cases such as this is governed by state law, *see Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975), which, in the case of New York, requires, in the absence of an agreement among the parties, statutory authorization for such an award. *See City of Buffalo v. J.W. Clement Co.,* 28 N.Y.2d 241, 262–63, 269 N.E.2d 895, 908, 321 N.Y.S.2d 345, 364, *reh'g denied,* 29 N.Y.2d 640, 273 N.E.2d 315, 324 N.Y.S.2d 462 (1971); *Lewis v. S.L. & E., Inc.,* 629 F.2d 764, 773 (2d Cir.1980). The record discloses no agreement provid-

ing for the award of attorneys' fees. Nor are we aware of any New York statute upon which an award of attorneys' fees could be based in this case. Accordingly, we reverse so much of the judgment as directed Cord Meyer to pay Grand Union's attorneys' fees.

Affirmed in part, reversed in part.